OPINION
{¶ 1} Defendant-appellant, Jeffrey Vaughn, appeals from a decree issued by the Warren County Court of Common Pleas, Domestic Relations Division, granting a divorce to appellant and his former wife, plaintiff-appellee, Teresa Vaughn.
 {¶ 2} The parties were married in September 1998. One child was born as issue of their marriage in April 2004. Prior to their marriage, the parties entered into a prenuptial *Page 2 
agreement, in which they agreed upon such things as the terms of spousal support in the event of a divorce or dissolution.
 {¶ 3} The parties separated in late October or early November of 2005. On November 10, 2005, appellee filed a complaint for divorce. Appellant filed an answer and counterclaim shortly thereafter. At the time she filed for divorce, appellee sought and received from the trial court a temporary order naming her as the residential parent of the parties' minor child, and ordering appellant to pay appellee $3,175 per month in child support plus a two percent processing fee.
 {¶ 4} On December 5, 2005, the parties filed an agreed entry, in which appellant agreed to pay appellee temporary spousal support in the amount of $3,750 per month, effective December 1, 2005. The agreed entry expressly vacated the trial court's previous order relating to temporary child support, and stated that "the parties shall not exchange child support in light of the spousal support to be paid pursuant to this order." The agreed entry also stated that "[t]he parties understand that the terms of the order are temporary[,]" and "[t]hese monthly temporary support payments count toward the term of alimony which is not to exceed 24 months pursuant to the parties' prenuptial agreement."
 {¶ 5} After holding a final hearing on the outstanding issues between the parties, the trial court issued a decision, finding that appellant, who is a financial adviser, had an annual income in 2006 of $342,000, and that appellee, who is a hairstylist, should be imputed to have an annual income of $90,000. The court ordered appellant to pay appellee $2,500 per month in child support along with the two percent processing fee. The court also found that under the terms of the parties' prenuptial agreement, appellant owed appellee "no spousal support at this time[,]" but the court reserved jurisdiction over the issue of spousal support for a period of two years from the date of the final hearing. The trial court subsequently incorporated its decision into a final decree of divorce. *Page 3 
 {¶ 6} Appellant now appeals from the decree of divorce, raising six assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT ORDERED A DEVIATION UPWARD FROM THE CHILD SUPPORT WORKSHEET."
 {¶ 9} Appellant argues that the trial court erred in ordering an upward deviation from the child support schedule and applicable worksheet, which requires him to pay $1,000 more per month in child support than suggested by those guidelines. We disagree with this argument.
 {¶ 10} R.C. 3119.04(B) states in pertinent part:
 {¶ 11} "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 12} "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion."Pauly v. Pauly, 80 Ohio St.3d 386, 390, 1997-Ohio-105. A trial court abuses its discretion when the court's decision is arbitrary, unconscionable, or *Page 4 
unreasonable. See Murray v. Murray (1999), 128 Ohio App.3d 662, 666. A decision is "unreasonable" when there is no sound reasoning process to support it. AAA Enterprises, Inc. v. River Place Community RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161.
 {¶ 13} In this case, the parties' combined gross income is greater than $150,000. Therefore, the trial court was required to determine the amount of appellant's child support obligation by considering the "needs and the standard of living" of the parties' child and of the parties themselves. R.C. 3119.04(B).
 {¶ 14} The trial court determined that under the current child support schedule and applicable worksheet, appellant would be obligated to pay appellee $1,570 per month in child support including the two percent processing fee. The court noted that the parties offered no testimony on the "needs" of their minor child, but found that it was obvious that the parties had a "very high standard of living."
 {¶ 15} The court concluded that in light of the parties' incomes and assets, it would be "unjust and inappropriate and not in the best interests of the child" to set appellant's child support obligation under the basic child support schedule and applicable worksheet for parents with a combined gross income of $150,000. As a result, the court set appellant's child support obligation at $2,500 per month plus the two percent processing fee, after finding that appellee was entitled to some "upward deviation" under R.C. 3119.22[1] and 3119.23[2] *Page 5 
"because of the disparity in income between the parties and the standard of living that the child would have enjoyed had the marriage continued," see R.C. 3119.23(G) and (L), and that appellant was entitled to some "downward deviation" because appellant "has some extended parenting time." See R.C. 3119.23(D).
 {¶ 16} The trial court did not abuse its discretion in ordering appellant to pay $2,500 plus a two percent processing fee. The evidence showed that appellant's 2006 income of $342,000 was more than three and a half times appellee's imputed income of $90,000. Additionally, there is evidence that appellant's annual income in recent years has been significantly higher than $342,000.
 {¶ 17} The trial court acknowledged that the parties did not present any testimony *Page 6 
regarding the needs of the parties' child. However, as the court found, it was apparent from the evidence presented that the parties enjoyed a very high standard of living during the marriage. This fact, along with the significant disparity in the parties' incomes, supports the trial court's determination to set appellant's child support obligation at $2,500 per month.
 {¶ 18} Appellant asserts that the trial court erred by taking "judicial notice"[3] of the "very high standard of living" of the parties and their child, and by using the former child support schedule and worksheet contained in the prior law[4] to support the court's decision to deviate from the minimum amount of child support set forth in R.C. 3119.04(B). We find these arguments unpersuasive.
 {¶ 19} Initially, we disagree with appellant's assertion that the trial court took judicial notice of the parties' "very high standard of living." The parties' testimony and other evidence in the record clearly demonstrated that the parties enjoyed a high standard of living during their marriage, and in light of this evidence, it was reasonable for the trial court to infer that the parties' child enjoyed this same high standard of living during the marriage.
 {¶ 20} As to appellant's claim that the trial court erred by citing the former law in support of its decision to deviate from the minimum amount of child support under R.C. 3119.04(B), the trial court did note that under the former child support schedule and worksheet, appellant would have been obligated to pay appellee $3,468.41 in child support including the two percent processing fee.
 {¶ 21} However, it does not appear that the trial court abused its discretion in referring *Page 7 
to the former law in discussing its decision to order appellant to pay child support in the amount of $2,500 per month plus the two percent processing fee. Instead, the court appears to have cited the amount appellant would have been required to pay under the former law merely to show that the amount the court was ordering appellant to pay was not excessive or unreasonable.
 {¶ 22} Appellant's first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE TRIAL COURT ERRED WHEN IT RETAINED JURISDICTION OVER AN ORDER OF SPOUSAL SUPPORT WHEN THE COURT DID NOT MAKE AN ORDER OF SPOUSAL SUPPORT."
 {¶ 25} Appellant argues that the trial court erred by retaining jurisdiction over the issue of spousal support for a period of two years from the date of the final hearing when the court found that appellee was not entitled to an award of spousal support at the time of the final hearing. We agree with this argument.
 {¶ 26} As both sides acknowledge, there is a conflict of authority over whether a trial court may reserve jurisdiction over the issue of spousal support if the court does not enter an order of spousal support at the time of the divorce. Sowald Morganstern, Ohio Domestic Relations Law (4th Ed.2007) 719, Section 14:6. Cases finding that a trial court may reserve jurisdiction in such instances include Okos v. Okos (2000), 137 Ohio App.3d 563, 580-581; Aylstock v.Bregenzer (June 29, 1994), Montgomery App. No. 14325; and Harbert v.Harbert (Nov. 1, 1995), Greene App. No. 95 CA 41. Cases finding that a trial court may not reserve jurisdiction in such instances includeWolding v. Wolding (1992), 82 Ohio App.3d 235, 239; *Page 8 
and Montgomery v. Montgomery, Pike App. No. 02CA687, 2003-Ohio-4558.[5]
 {¶ 27} R.C. 3105.18, which governs the award of spousal support and the modification thereof, provides in pertinent part:
 {¶ 28} "(E) * * * if a continuing order for periodic payments of money as spousal support is entered in a divorce * * * action that is determined on or after January 1, 1991, the court that enters the decree of divorce * * * does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 {¶ 29} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support."
 {¶ 30} In light of the plain language of R.C. 3105.18(E), it is clear that that section does not apply unless a "continuing order for periodic payments of money as spousal support" has been entered in the divorce action. See Montgomery, 2003-Ohio-4558 (by using the conditional "if," R.C. 3105.18[E] plainly indicates jurisdiction cannot continue if there is no continuing order), and Wolding, 82 Ohio App.3d at 239. If the General Assembly had wanted a trial court to have the discretion to reserve jurisdiction to make a future award of spousal support even where the court had not made a continuing order for spousal support in the original divorce decree, we believe the legislature would have expressly said so. Since it did not, we conclude that no such authority exists.
 {¶ 31} Therefore, we agree with those courts that have held that a trial court has no authority to retain jurisdiction over the issue of spousal support where the court has *Page 9 
specifically found that spousal support was not warranted at the time the court issues a final decree of divorce. See Wolding,82 Ohio App.3d at 239, and Montgomery, 2003-Ohio-4558.
 {¶ 32} In this case, the trial court did not enter a continuing order for spousal support. Therefore, the court erred by retaining jurisdiction over the issue of spousal support.
 {¶ 33} Appellant's second assignment of error is sustained.
 {¶ 34} Assignment of Error No. 3:
 {¶ 35} "THE TRIAL COURT ERRED WHEN IT CONVERTED THE TEMPORARY ORDER OF SUPPORT FROM A TEMPORARY ORDER OF SPOUSAL SUPPORT TO A TEMPORARY ORDER OF CHILD SUPPORT."
 {¶ 36} Appellant notes that this court need only address this assignment of error if we determine "that the trial court can retain jurisdiction over [the issue of] spousal support even where it has not made an award of spousal support[.]" However, this court has sustained appellant's second assignment of error and held that the trial courtcannot retain jurisdiction over the issue of spousal support when it fails to make an award of spousal support in the final decree of divorce. Consequently, appellant's third assignment of error has been rendered moot by our disposition of appellant's second assignment of error; therefore, we need not rule on appellant's third assignment of error. See App.R. 12(A)(1)(c).
 {¶ 37} Assignment of Error No. 4:
 {¶ 38} "THE TRIAL COURT FAILED TO MAKE AN EQUAL DIVISION OF MARITAL PROPERTY WHEN IT ORDERED HUSBAND TO PAY ALL OF THE INCOME TAX LIABILITY FOR TAX YEARS 2004 AND 2005."
 {¶ 39} Appellant argues that the trial court erred by ordering him to pay all tax liability resulting from his business income for tax years 2004 and 2005, rather than dividing this debt equally between the parties. We disagree with this argument.
 {¶ 40} While the division of marital assets is not specifically addressed by R.C. *Page 10 3105.171, courts have found that the starting point for allocating marital property is an equal division of both marital assets and marital debts. Smith v. Smith, Butler App. No. CA2001-10-251, 2002-Ohio-4232, at ¶ 7. If equal division of marital assets or marital debts would produce an inequitable result, however, then the marital assets or marital debts should be divided equitably rather than equally. See Elliott v.Elliot, Ross App. No. 05CA2823, 2005-Ohio-5405, at ¶ 16 (because a trial court must consider both the assets and liabilities of the spouses pursuant to R.C. 3105.171[F][2] in dividing marital property, an equitable division of marital property under R.C. 3105.171[C][1] necessarily implicates an equitable division of marital debt).
 {¶ 41} A trial court's allocation of marital debt will not be reversed absent an abuse of discretion. Elliot at ¶ 17. A trial court does not abuse its discretion when there is some competent, credible evidence to support its decision. Smith, 2002-Ohio-4232 at ¶ 7.
 {¶ 42} The parties' prenuptial agreement expressly provides for the equitable division of marital debt, as follows:
 {¶ 43} "Any property, which is not Separate Property as defined above,[6] which the parties accumulate after January 1, 1999, is Marital Property. Any debts incurred after January 1, 1999 which are not related to Separate Property shall be Marital Debts. If the parties' marriage is terminated other than by death, the parties shall divide the Marital Property equally. The Court shall allocate the Marital Debtsequitably." (Emphasis added.)
 {¶ 44} Appellant first asserts that the trial court erred by ordering him to pay all income tax liability arising from his business income for tax years 2004 and 2005. Without citing any specific authority in support, he contends that "it is typically a foregone conclusion that *Page 11 
income taxes on marital income is [sic] a marital debt to be borne equally by both parties."
 {¶ 45} Appellant's argument ignores the plain terms of the parties' prenuptial agreement, which states that the parties' marital debts are to be divided equitably rather than equally. Appellant attempts to circumvent this plain language by arguing that the trial court created an unequal division of the parties' marital property in violation of their prenuptial agreement by not dividing evenly between the parties the debt arising from his income tax liability for tax years 2004 and 2005. We find this argument unpersuasive.
 {¶ 46} While the parties' prenuptial agreement expressly states that the parties' marital property is to be divided equally, the agreement also expressly states that the parties' marital debts are to be dividedequitably. The trial court noted that, normally, it would have accepted appellant's argument that since appellee "shared in the receipt of the income, * * * she should share in the payment of taxes due."
 {¶ 47} However, the trial court declined to accept that argument under the facts of this case on the grounds that appellant "has many credibility problems." Specifically, the court stated that it shared appellee's concern that appellant's tax returns "may be questionable." In support, the court noted that appellant had once told appellee that he wrote off the cost of their wedding on his tax return. The court also noted that appellant had been investigated by the SEC on one transaction, and has failed to file tax returns as the court ordered.
 {¶ 48} The trial court did grant appellant's request to order appellee to file joint tax returns with appellant for tax year 2004. However, the court did so on the condition that appellant pay all taxes, penalties, and interest due and hold appellee harmless from same.
 {¶ 49} There is evidence in the record to support the trial court's refusal to make appellee liable for half of the tax liability arising from appellant's income in 2004 and 2005. See Smith, 2002-Ohio-4232 at ¶ 7. In particular, the evidence shows that appellee paid all of her income tax due for 2004 and 2005. *Page 12 
 {¶ 50} Furthermore, it has been held that a trial court does not abuse its discretion in ordering one spouse to pay the entire income tax liability of both parties where the overall distribution of marital property was fair. Cromberg v. Cromberg (May 26, 1995), Lucas App. No. L-94-143. In this case, the overall distribution of the parties' marital property appears to have been fair.
 {¶ 51} Consequently, the trial court did not abuse its discretion in refusing to make appellee liable for one-half of the income tax liability arising from appellant's income for tax years 2004 and 2005.
 {¶ 52} Appellant's fourth assignment of error is overruled.
 {¶ 53} Assignment of Error No. 5:
 {¶ 54} "THE TRIAL COURT ERRED IN ORDERING HUSBAND TO PAY ALL MARITAL DEBTS."
 {¶ 55} Appellant argues that the trial court erred by failing to divide equally, or at least more equitably, several of the parties' marital debts. We disagree with this argument.
 {¶ 56} The marital debts to which appellant refers are various legal and accounting expenses that arose from several of appellant's business transactions. These expenses include legal fees incurred over a controversy involving "occupational taxes" that appellant owed to the city of Covington, Kentucky; legal fees incurred in connection with litigation over the sale and purchase of stock in Earth Boards Sports; accounting fees for preparation of the 2004 and 2005 tax returns; and expenses charged to appellant by his past employer Lincoln National (also referred to as "Lincoln Financial Advisers").
 {¶ 57} As to the expenses Lincoln charged appellant, the trial court found that the parties did not actually owe any money to Lincoln, because Lincoln had already subtracted the amounts appellant owed it from the commissions Lincoln owed appellant. The trial court's decision not to treat these expenses as marital debt was clearly not an abuse of *Page 13 
discretion. See Elliot, 2005-Ohio-5405, at ¶ 17.
 {¶ 58} The trial court also did not abuse its discretion in making appellant responsible for the legal fees incurred over the occupational taxes that appellant owed to Covington, Kentucky. It is clear from the evidence presented that appellee was not involved in appellant's business transactions, and, therefore, the trial court did not abuse its discretion in making appellant responsible for these fees. See id.
 {¶ 59} Appellant also argues that the trial court erred by ordering him to pay the entirety of the legal fees ($8,750.32) the parties incurred as a result of the litigation regarding the sale and purchase of the parties' stock in Earth Boards Sports. However, a review of the final decree of divorce shows that the trial court made appellee responsible for one-half of these fees, and ordered the bill for the attorney fees to be paid from the proceeds of the sale of the parties' real estate.
 {¶ 60} Appellant also argues that the trial court erred by ordering appellant to pay the entire bill for preparation of the 2004 and 2005 tax returns. However, the final decree of divorce shows that that while the court ordered appellant to pay the tax preparation fees for anyjoint returns, the court made each party responsible for their own tax preparation fees. Furthermore, the trial court did not abuse its discretion in ordering appellant to pay the tax preparation fees for any joint returns since appellant was the party who benefited from the order requiring the parties to file a joint return for tax year 2004. SeeElliot, 2005-Ohio-5405, at ¶ 17.
 {¶ 61} Appellant's fifth assignment of error is overruled.
 {¶ 62} Assignment of Error No. 6:
 {¶ 63} "THE TRIAL COURT ERRED WHEN IT HELD THAT THE ENTIRE INVESTMENT IN CONSTRUCTION SOFTWARE TECHNOLOGIES WAS MARITAL PROPERTY." *Page 14 
 {¶ 64} Appellant argues that the trial court erred in finding that the entirety of a promissory note held by the parties from Construction Software Technologies (hereinafter "CST") constituted marital property that was subject to equal division between the parties. He asserts that $30,000 of the note was neither his separate property nor the parties' marital property, but, instead, was the property of his father, Ronald Vaughn. He insists that the evidence presented at trial on this issue "was, in any real sense, undisputed." We disagree with this argument.
 {¶ 65} The evidence presented at trial showed that in 2001, appellant gave David Conway, the president and CEO of CST, approximately $61,000 to $62,000 in cash in a brown paper bag to invest in the company. Conway issued a promissory note to appellant that was convertible to stock in CST. Conway testified at trial that appellant had told him at the time he gave him the cash that he "was making this investment with my father." Appellant's father, Ronald Vaughn, testified at trial that the $30,000 came from his personal safe.
 {¶ 66} However, Ronald acknowledged that he has no documentation regarding the $30,000 he claims to have given to appellant, nor any documentation regarding his interest in the promissory note or any potential stock from CST. Furthermore, appellee submitted a handwritten list of assets from appellant, wherein appellant listed as one of his assets 477,506 shares of CST stock at .12875 cents a share, with an estimated value of $61,479.
 {¶ 67} In light of the foregoing, there was some competent, credible evidence presented at trial to support the trial court's finding that the entire amount of the promissory note from CST was marital property subject to equal division between the parties under R.C. 3105.171(C)(1). Therefore, we will not reverse the trial court's factual finding on this issue. See Bell v. Turner, 172 Ohio Ap.3d 238, 2007-Ohio-3054, ¶ 22.
 {¶ 68} Appellant's sixth assignment of error is overruled. *Page 15 
 {¶ 69} The trial court's judgment is affirmed in part, reversed in part and this cause is remanded to the trial court with instructions to delete the portion of the court's January 19, 2006 decree of divorce in which the court reserves jurisdiction over the issue of spousal support for a two-year period from the date of the final hearing in these divorce proceedings.
 {¶ 70} Judgment affirmed as modified.
YOUNG, P.J., and BRESSLER, J., concur.
[1] {¶ a} R.C. 3119.22 states:
{¶ b} "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child.
{¶ c} "If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination."
[2] {¶ a} R.C. 3119.23 states:
{¶ b} "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:
{¶ c} "(A) Special and unusual needs of the children;
{¶ d} "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
{¶ e} "(C) Other court-ordered payments;
{¶ f} "(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
{¶ g} "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
{¶ h} "(F) The financial resources and the earning ability of the child;
{¶ i} "(G) Disparity in income between parties or households;
{¶ j} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
{¶ k} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
{¶ l} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
{¶ m} "(K) The relative financial resources, other assets and resources, and needs of each parent;
{¶ n} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
{¶ o} "(M) The physical and emotional condition and needs of the child;
{¶ p} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
{¶ q} "(O) The responsibility of each parent for the support of others;
{¶ r} "(P) Any other relevant factor.
{¶ s} "The court may accept an agreement of the parents that assigns a monetary value to any of the factors and criteria listed in this section that are applicable to their situation.
{¶ t} "If the court grants a deviation based on division (P) of this section, it shall specifically state in the order the facts that are the basis for the deviation."
[3] Evid.R. 201 allows a trial court to take judicial notice of "adjudicative facts," i.e., "the facts of the case," Evid.R. 201(A), where the "judicially noticed fact" is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). "A court may take judicial notice whether requested or not[,]" Evid.R. 201(C), "at any stage of the proceedings." Evid.R. 201(F).
[4] Presumably, appellant is referring to the now repealed R.C. 3119.215.
[5] The Harbert court found its decision in conflict withWolding, and certified the conflict to the Ohio Supreme Court. The Ohio Supreme Court found that a conflict existed and accepted the case for review, but the appellant in Harbert dismissed the case prior to a decision. See Sowald Morganstern at 719.
[6] The parties' prenuptial agreement defines "separate property" as the property specified in Schedule "A," which is a list of appellant's premarital assets that have a value of over $1.5 million, and Schedule "B," which is a list of appellee's premarital assets that have an approximate value of $23,500. A copy of Schedules A and B are attached to the prenuptial agreement. *Page 1