[Cite as *Williams v. Williams*, 2025-Ohio-1319.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


THERESA A. WILLIAMS,          :

      Appellee,             :

   - vs -                 :

                             :

LAWRENCE E. WILLIAMS,     :

      Appellant.            :

CASE NO. CA2024-06-051

O P I N I O N
4/14/2025


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2021 DRB 01413


Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellee.

Zachary D. Smith, LLC, and Zachary D. Smith, for appellant.


**POWELL, J.**

{¶ 1} Appellant, Lawrence E. Williams ("Husband"), appeals a divorce decree of the Clermont County Court of Common Pleas, Domestic Relations Division.[1]

---

1. Husband died in August 2024, a few months after the final divorce decree. On October 28, 2024, Beth Williams, Husband's personal representative, was substituted as party to this appeal. For purposes of readability, we will refer to appellant as Husband.

**{¶ 2}** Appellee, Theresa Williams ("Wife"), and Husband were married in May 1991. During the marriage, the parties acquired several parcels of property. One property was the parties' marital residence; the other properties were rentals. In 2015, Wife filed for divorce due to Husband's alcohol and drug abuse and gambling. The parties, however, reconciled in 2016. For most of the marriage, Husband owned and operated a masonry business, Larry Williams Masonry, Inc., and Wife worked as an executive administrative assistant. In 2017, the parties started a delivery/courier business and worked together for two years. By 2018, the parties began experiencing financial difficulties. In 2019, the delivery/courier business "fizzled out," the delivery van was repossessed, and the parties separated. Wife remained in the marital residence and Husband resided in one of the parties' properties. Husband continued to manage the parties' real estate portfolio and collected the rents. However, for a period of approximately two years, mortgage and real estate tax payments were not made for the parties' properties.

**{¶ 3}** In 2021, Husband informed his sister, Mary E. Williams ("Beth"), that he and Wife were divorcing, and asked Beth to help with managing the parties' properties. Beth has an accounting degree and was the sole member and owner of REH, L.L.C. Between 2021 and 2023, Beth advanced substantial sums of money to assist the parties financially. The majority of the funds advanced by Beth—$182,869.74—were used for mortgage payments, real estate taxes, utilities, repairs, and attorney fees related to the parties' real estate portfolio. Beth also advanced $5,978.60 to Larry Williams Masonry, $2,000 to Wife for car repairs, and $17,464.52 to Husband. Beth/REH, L.L.C. ultimately purchased five of the parties' properties. The net proceeds were held in trust by Husband's counsel. Prior to trial, the parties agreed that the net proceeds were marital but disputed how the proceeds should be allocated.

**{¶ 4}** On November 15, 2021, Wife filed a complaint for divorce. The matter

- 2 -

proceeded to a trial on March 28, 2023. As pertinent here, the main issue was the property division and whether the money advanced by Beth constituted marital debt. Wife conceded that Beth had loaned her $2,000 for car repairs and stated she would repay Beth. Wife, however, denied any knowledge regarding Beth's advances to the parties, Husband, and Husband's business, and testified that Beth was not entitled to any credit for these advances. Beth testified that the advances she made to preserve the parties' real estate portfolio were loans for which she expected the parties to repay her. Husband likewise testified that Beth's advances to preserve the parties' real estate portfolio were marital debts to be allocated between him and Wife.

{¶ 5} In its December 29, 2023 decision, the trial court addressed only Beth's $2,000 advance to Wife for car repairs, and her $5,978.60 advance to Larry Williams Masonry. The court found that the $2,000 advance was a marital debt and that the $5,978.60 advance was a gift and not a loan. Regarding Beth's advance to Larry Williams Masonry, the trial court specifically found that

> Wife was unaware of any loans between the business and Beth Williams. Wife was shown no documents; she and Husband had no discussions about repaying his sister. Beth Williams testified that she had communications with Wife about the parties' financial situation and the "loans."
>
> The agreement was not reduced to writing and executed by the parties to the "loan" to the business; no testimony was offered as to the terms of the repayment and other terms of the agreement. There is no record of Beth Williams demanding repayment, nor any evidence that the business made any payments to her.
>
> . . .
>
> The absence of any formal indications of a loan—bolstered by the lender's professional background—demonstrates that influx of money to the business from Husband's sister has the hallmarks of a gift rather than a loan. Any money given to the business by Beth Williams or the limited liability corporation of which she is the sole member, is not a marital debt to be

- 3 -

divided by the Court. The repayment of any loan by Beth Williams (or an entity in which she has an interest) to the business is the sole responsibility of Husband.

{¶ 6} The trial court did not discuss Beth's $17,464.52 advance to Husband or her $182,869.74 advance to preserve the parties' real estate portfolio. However, in its decision and its May 23, 2024 divorce decree, the trial court ordered that "[a]ny outstanding liability to Beth Williams (excluding the aforementioned debt of $2,000 which was held to be marital), or to any entity in which Beth Williams has an interest, is the separate liability of Husband. Wife is to be held harmless thereon."

{¶ 7} Husband now appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED IN FAILING TO FIND THAT CERTAIN FUNDS ADVANCED TO THE PARTIES WERE A MARITAL DEBT.

{¶ 9} Husband challenges the trial court's decision assigning him any outstanding liability to Beth as his separate liability. Husband raises two issues for review.

{¶ 10} In his first issue for review, Husband argues that the trial court erred in failing to explain the basis for assigning him outstanding liabilities to Beth in its property division pursuant to R.C. 3105.171(G). Husband further notes that the trial court failed to identify the outstanding liabilities.

{¶ 11} Property division in a divorce case is a two-step process. *Roetting v. Roetting*, 2015-Ohio-2461, ¶ 17 (12th Dist.). First, the trial court must classify the property by determining what constitutes marital property and what constitutes separate property. *Id.*; R.C. 3105.171(B). Although the statute does not mention debt as an element of marital and separate property, the rules concerning marital assets have been consistently applied to marital and separate debt. *Smith v. Smith*, 2017-Ohio-7463, ¶ 8 (12th Dist.).

{¶ 12} After classifying the property as separate or marital, the trial court must disburse a spouse's separate property to that spouse and divide the marital property

equally between the spouses. *Id.* at ¶ 9. However, if the trial court finds that an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. *Id.* If the trial court finds that sufficient evidence supports the existence of alleged debts, it must classify such debts as marital or separate in nature, determine the amount of the debts, and consider the debts in dividing the marital and separate property equitably between the spouses pursuant to R.C. 3105.171. *Matheson v. Matheson*, 2024-Ohio-2477, ¶ 5 (9th Dist.).

{¶ 13} To facilitate meaningful appellate review of the trial court's division of marital property, R.C. 3105.171(G) requires the trial court to "make written findings of fact that support the determination that the marital property has been equitably divided . . .." *Roetting*, 2015-Ohio-2461 at ¶ 19. These findings are especially important where the division results in an unequal distribution of property. *Id.* The requirements of R.C. 3105.171(G) are satisfied when the trial court indicates the basis for its determinations in sufficient detail to enable the reviewing court to ascertain whether the property division is fair, equitable, and in accordance with the law. *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97 (1988).

{¶ 14} Husband presented evidence that Beth made substantial advances to the parties, jointly or individually, including the $182,869.74 advance to the parties to preserve the parties' real estate portfolio and the $17,464.52 advance to Husband. Although all of Beth's advances were the main issue at trial and were further argued in the parties' post-trial written closing briefs, the trial court only addressed Beth's advance to Wife for car repairs and Beth's advance to Husband's business in its property division. The trial court did not address, explicitly or otherwise, Beth's advance to the parties to preserve the parties' real estate portfolio and Beth's advance to Husband, much less classify either advance as a marital or separate debt or a gift. Furthermore, the trial court

- 5 -

did not even find that anything was owed to Beth but merely ordered that "any outstanding liability to Beth," excluding the $2,000 advance to Wife which was held to be marital, was "the separate liability of Husband. Wife is to be held harmless thereon." The trial court did not identify the outstanding liabilities to Beth.

{¶ 15} The trial court's order that Husband be solely responsible for "any outstanding liability" to Beth could be interpreted as a finding that Beth's $182,869.74 and $17,464.52 advances were Husband's separate debt, that the advances were a marital debt but were allocated solely to Husband as an equitable but unequal allocation of marital property, or that the advances were a gift from Beth. Nevertheless, we may not assume that the trial court treated the advances as any of the foregoing because our role as an appellate court does not allow such conjecture. *Roetting*, 2015-Ohio-2461 at ¶ 26; *Flynn v. Flynn*, 2011-Ohio-4714, ¶ 46 (12th Dist.).

{¶ 16} The starting point for allocating marital property is an equal division of marital assets and debts. *Ornelas v. Ornelas*, 2012-Ohio-4106, ¶ 32 (12th Dist.). If equal division of marital assets or marital debts would produce an inequitable result, however, then the marital assets or marital debts should be divided equitably rather than equally. *Vaughn v. Vaughn*, 2007-Ohio-6569, ¶ 40 (12th Dist.). The trial court should have explicitly considered and determined whether, and to what extent, Beth's $182,869.74 advance to the parties to preserve the parties' real estate portfolio and Beth's $17,464.52 advance to Husband were marital debts, and if so, how they should be allocated between the parties. In the absence of any written findings of fact by the trial court regarding these two advances as required by R.C. 3105.171(G), we are unable to review the trial court's property division. In particular, we are unable to determine whether the trial court erred in assigning Husband unidentified outstanding liabilities to Beth, and more broadly, whether the trial court's property division was fair, equitable, and in accordance with the law.

{¶ 17} Consequently, we find that the trial court failed to comply with R.C. 3105.171(G). Husband's first issue for review is sustained, and the trial court's property division is reversed and remanded with instruction to make sufficient findings of fact consistent with R.C. 3105.171(G), and divide the parties' marital property consistent with these findings. *Roetting*, 2015-Ohio-2461 at ¶ 28; *Childs v. Childs*, 1996 Ohio App. LEXIS 892, *7-8 (12th Dist. March 11, 1996).

{¶ 18} In his second issue for review, Husband argues that the trial court improperly classified and allocated the $182,869.74 advance Beth made during the marriage for the benefit of the parties' real estate portfolio. This argument assumes that the trial court found that this advance was Husband's separate debt. However, as set forth above, we are unable to determine how the trial court classified Beth's $182,869.74 advance to the parties because the trial court only addressed Beth's $2,000 advance to Wife and the $5,978.60 advance to Larry Williams Masonry. Again, the trial court's order that Husband be solely responsible for "any outstanding liability" to Beth may be interpreted as a finding that the $182,869.74 advance was Husband's separate debt, that the advance was a marital debt but was allocated solely to Husband as an equitable but unequal allocation of marital property, or that the advance was a gift from Beth. Considering the trial court's failure to make the requisite findings of fact under R.C. 3105.171(G), Husband's second issue is not ripe for review.

{¶ 19} Husband's assignment of error is sustained.

{¶ 20} Judgment reversed and remanded.

HENDRICKSON, P.J., and SIEBERT, J., concur.