[Cite as *McNabb v. McNabb*, 2013-Ohio-2158.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| BRYAN CLAYTON MCNABB, | : | |
| | | CASE NOS. CA2012-06-056 |
| Plaintiff-Appellant/Cross-Appellee, | : | CA2012-06-057 |
| | : | O P I N I O N |
| - vs - | | 5/28/2013 |
| | : | |
| JENNIFER MCNABB, | : | |
| Defendant-Appellee/Cross-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 07DR31523

Kornman Law Office, LLC, Sharon A. Kornman, 731 S. South Street, P.O. Box 1041, Wilmington, Ohio 45177, for appellant/cross-appellee

John D. Smith Co., LPA, John D. Smith, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellee/cross-appellant

**RINGLAND, P.J.**

{¶ 1} Appellant/cross-appellee, Bryan Clayton McNabb, appeals from the judgment of the Warren County Court of Common Pleas, Division of Domestic Relations, modifying his child support obligations. Appellee/cross-appellant, Jennifer McNabb, cross-appeals from the same judgment. For the reasons that follow, we affirm in part and reverse in part the judgment of the domestic relations court and remand this matter for further proceedings.

{¶ 2}    Bryan McNabb (Father) and Jennifer McNabb (Mother) were divorced in 2009. The parties' divorce decree incorporated a decree of shared parenting which, in turn, incorporated the parties' agreed shared parenting plan.   The shared parenting plan addressed the issues of parenting time, child support and health insurance coverage for the parties' minor child.   The parties agreed on the amount of their respective incomes for purposes of calculating child support.  The parties agreed to provide Father with a 21 percent deviation in the amount of child support that he would otherwise have been obligated to pay under the basic child support schedule in R.C. 3119.02 and the child support worksheets in R.C. 3119.022 and 3119.023 in recognition of the additional parenting time that Father exercised with the parties' minor child.  The parties also agreed not to include as income to Mother benefits she receives from certain trusts that had been established for her that pay most expenses related to the home in which she resides.  Additionally, the shared parenting plan obligated mother to pay $200 per month from the child support she received from Father into a "529 plan" to help establish a college fund for the parties' minor child.

{¶ 3}    In 2010, the parties began exercising parenting time with their minor child under a schedule different from the one set forth in the agreed shared parenting plan.  The parties' informal agreement gave Father additional parenting time with the parties' child.  The parties followed their informal agreement for approximately one year, during which time the parties agreed to change their parenting schedule on several occasions.  However, the parties were eventually unable to agree on a mutually acceptable parenting schedule.  Moreover, Father experienced a significant decrease in his annual income, which at the time of the parties' divorce was $231,000 but had decreased to $176,000.

{¶ 4}    As a result, in 2011 father filed a motion to modify the agreed shared parenting plan.  Father asked the domestic relations court to make the parties' informal modifications to their shared parenting plan the order of the court, and modify the child support order to reflect

both the increased amount of time the minor child was spending with him and the significant reduction in his income. Several months later, Mother filed a motion to modify the shared parenting schedule with respect to evenings during the school week because the minor child was entering kindergarten.

{¶ 5} In 2012 the magistrate, after holding an evidentiary hearing on the parties' motions, issued a decision granting Father's motion to modify the parenting schedule and denying Mother's motion to modify the parenting schedule. The magistrate lowered Father's monthly child support payment from $1,624.98 to $1,325.84. The magistrate noted that the child support order she issued was a deviation from the child support schedule, and stated that the deviation was necessary because the "scheduled amount" of child support "would be unjust and inappropriate and * * * deviation is in the best interest of the child[.]" The magistrate determined the amount of the deviation by "offsetting" the parties' child support obligations, finding that it was in the child's best interest to do so.

{¶ 6} The magistrate rejected Father's request that Mother's trust benefits be considered for purposes of calculating child support, finding that he was barred from relitigating this issue by the doctrine of collateral estoppel, and that he failed to show the necessary change of circumstances required by R.C. 3119.79(C). Additionally, the magistrate *sua sponte* modified the provision in the parties' original agreed shared parenting plan in which they had agreed to split evenly the minor child's uninsured medical expenses, finding that Father now should pay 90 percent of those expenses and that Mother should pay the remaining 10 percent.

{¶ 7} The domestic relations court overruled both parties' objections to the magistrate's decision and adopted that decision as its final order.

{¶ 8} Father now appeals from the judgment of the domestic relations court and assigns the following as error:

- 3 -

{¶ 9} Assignment of Error No. 1:

{¶ 10} "THE TRIAL COURT'S APPLICATION OF COLLATERAL ESTOPPEL TO REMOVE CONSIDERATION OF DEFENDANT/APPELLEE'S TRUST BENEFITS AS INCOME FOR THE PURPOSE OF CALCULATING CHILD SUPPORT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."

{¶ 11} Assignment of Error No. 2:

{¶ 12} "THE TRIAL COURT'S DECISION TO CALCULATE THE DEVIATION IN CHILD SUPPORT BY USING AN OFFSET OF THE PARTIES [sic] OBLIGATIONS INSTEAD OF DEVIATING BY THE FACTORS IN R.C. §3119.24 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."

{¶ 13} Assignment of Error No. 3:

{¶ 14} "THE TRIAL COURT'S DECISION TO MODIFY THE ALLOCATION OF UNINSURED MEDICAL EXPENSES WHERE NEITHER PARTY HAD PUT FORTH THE MATTER AS AN ISSUE BEFORE THE COURT AND NO TESTIMONY WAS PRESENTED ON THE MATTER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 15} Mother cross-appeals from the same judgment, assigning the following as error:

{¶ 16} Cross-assignment of Error No. 1:

{¶ 17} "THE TRIAL COURT ERRED IN NOT ELIMINATING MOTHER'S OBLIGATION TO DEPOSIT $200 OF THE CHILD SUPPORT SHE RECEIVES INTO A 529 PLAN WHERE THE TRIAL COURT  REDUCED THE AMOUNT OF CHILD SUPPORT SHE RECEIVES AND THE PARTIES DID NOT AGREE TO THE $200 DEPOSIT BEFORE OR AT THE HEARING."

{¶ 18} In his first assignment of error, Father asserts that the domestic relations court erred by finding that he was barred under the doctrine of collateral estoppel from arguing that

the original shared parenting plan should be modified to have Mother's trust benefits considered as income to her for purposes of calculating child support. Father argues collateral estoppel does not apply because the necessary elements of the doctrine do not exist in this case. He also argues the domestic relations court erred because the law in this state requires that the doctrine of *res judicata*, of which collateral estoppel is one branch, should be applied cautiously, especially in cases where the court has retained continuing jurisdiction over a matter such as child support.

{¶ 19} The decision of a domestic relations court regarding modification of a child support obligation falls within the court's sound discretion, and its decision will not be reversed absent a showing of an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). A court abuses its discretion only when its decision is arbitrary, unconscionable or unreasonable. *York v. York*, 12th Dist. No. CA2011-03-016, 2011-Ohio-5872, ¶ 8.

{¶ 20} Father initially asserts that collateral estoppel cannot be applied in this case because the issue concerning Mother's trusts was not actually and directly litigated in the parties' original divorce proceedings, since those proceedings were concluded with an agreement between the parties rather than by litigation between them. While Father does not cite any specific authority or case law in support of this argument, there is authority to support it. *See, e.g.,* Restatement Second of Judgments, §27 (1982), comment *e* ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section ["Issue Preclusion-General Rule"] does not apply with respect to any issue in a subsequent action."). However, this state does not follow the Restatement's position on this point of law.

{¶ 21} In *In re Gilbraith v. Hixson*, 32 Ohio St.3d 127, 129 (1987), the court found that "a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains,

- 5 -

therefore, just as enforceable as any other validly entered judgment." This principle has been followed in *Packer, Thomas & Co. v. Eyster*, 126 Ohio App.3d 109, 118 (1998) and *Kashnier v. Donnelly*, 81 Ohio App.3d 154, 156 (1991).

{¶ 22} Nevertheless, there is another basis on which to sustain Father's first assignment of error. In *Flege v. Flege*, 12th Dist. No. CA2003-05-111, 2004-Ohio-1929, ¶ 32, this court stated that "as a general rule, a motion to invoke the continuing jurisdiction of a domestic relations court regarding support matters is not barred by res judicata." Moreover, in *Kiehborth v. Kiehborth*, 169 Ohio App.3d 308, 2006-Ohio-5529, ¶ 15, the court found that *res judicata* should be applied with the "strictest of caution in order to prevent a chilling effect on Ohio's legal mechanisms for periodic adjustments to child-support orders."

{¶ 23} Collateral estoppel or "issue preclusion," is one branch of the doctrine of *res judicata*, which generally prohibits a party from relitigating the same *issue* once it has been actually litigated and determined in a prior action, *O'Nesti v. DeBarolo Realty Corp.*, 113 Ohio St.3d 59, 61, 2007-Ohio-1102, ¶ 7.[1] Consequently, we believe that the principles in *Flege* and *Kiehborth* apply to collateral estoppel or issue preclusion, as well as *res judicata*. Therefore, a motion to invoke the continuing jurisdiction of a domestic relations court regarding support matters is not barred by collateral estoppel, *see Flege*, and collateral estoppel should be applied with the strictest of caution in order to prevent a chilling effect on this state's legal mechanisms for periodic adjustments to child-support orders, *see Kiehborth*.

{¶ 24} The magistrate cited *Petralia v. Petralia*, 11th Dist. No. 2002-L-047, 2003-Ohio-3867, in support of its decision to apply the doctrine of collateral estoppel in this case. However, *Petralia* is readily distinguishable. In *Petralia*, the court found that a father's motion

---

1. The second branch of the doctrine of res judicata is known as "estoppel by judgment" or "claim preclusion" which generally prevents a party from bringing the same *claim* that was, or could have been, litigated in a prior action. *O'Nesti* at ¶ 6.

to modify child support was barred by res judicata since he had previously moved to modify his support obligation on the same basis and had presented no new evidence to support his motion. Here, by contrast, Father had not previously moved to modify his child support obligation on the same basis that he was seeking to have it modified in the current action.

{¶ 25} In light of the principles set forth in *Flege* and *Kiehborth*, we conclude that the domestic relations court erred by applying the doctrine of collateral estoppel and refusing to consider Father's request that Mother's trust benefits be considered as income to her for purposes of calculating the parties' child support obligations.

{¶ 26} The magistrate also cited Father's failure to establish a change of circumstances an additional reason in support of her decision to deny Father's request to have Mother's trust benefits considered as income to her for purposes of determining the parties' child support obligations. We find this reason to be unpersuasive, as well.

{¶ 27} In considering a request for modification of a prior child support order, a domestic relations court must first determine if a change of circumstances exists. R.C. 3119.79; *Yark v. Yark*, 6th Dist. No. F-00-010, 2001 WL 27550, *4, citing *Tremaine v. Tremaine*, 111 Ohio App.3d 703.

{¶ 28} R.C. 3119.79(A) provides:

> If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

**{¶ 29}** R.C. 3119.79(C) provides that other substantial changes of circumstances not contemplated when the last order was issued may also constitute the type of change of circumstances sufficient to warrant modification of a prior support order. If the domestic relations court finds that a change of circumstances has occurred, it must then determine the appropriate amount of child support. R.C. 3119.79.

**{¶ 30}** There is no question that there is a 10 percent difference between the amount of child support that Father had been ordered to pay under the parties' original shared parenting decree and the new amount calculated under the applicable schedule and worksheet that takes into account the significant decrease in his income. As a result of this change of circumstances, the magistrate reduced Father's monthly child support obligation by approximately $300. However, the magistrate refused to deem the significant reduction in Father's income as a change of circumstances sufficient to permit Father to seek modification of the provision in the parties' original shared parenting agreement in which the parties had agreed that the benefits Mother receives from certain trusts would not be considered as income to her for purposes of calculating child support. We conclude that the magistrate erred by refusing to do so.

**{¶ 31}** Under R.C. 3119.79(A), if the amount of child support as recalculated under the change of circumstances is more than 10 percent greater than, or more than 10 percent less than, the amount of child support required to be paid under the existing child support order, the domestic relations court is required to view this difference as a change of circumstances substantial enough to warrant modification of the child support order.

**{¶ 32}** The magistrate justified her decision not to find a change of circumstances with respect to the provision in the parties' original shared parenting plan on the basis that Father was aware of Mother's trust benefits at the time the parties entered into their original shared parenting agreement, and there had been no change in the trust benefits Mother receives.

However, the magistrate's determination ignores that there *was* a change of circumstances with respect to *Father's* income, i.e., he is now receiving significantly less income than he was receiving at the time of the original divorce decree.

{¶ 33} Accordingly, the trial court erred by refusing to consider whether to include Mother's trust benefits in her income for purposes of calculating child support based upon res judicada/collateral estoppel and/or lack of change of circumstances. This cause is therefore remanded so the trial court can address this issue. Father's first assignment of error is sustained.

{¶ 34} In his second assignment of error, Father argues that the domestic relations court erred by using an "offset" of the parties' obligations, rather than the factors in R.C. 3119.24, in calculating the deviation in child support to which he was entitled. Father asserts that "[t]he offset calculation in determining child support in a shared parenting arrangement was expressly rejected by the [Ohio] Supreme Court" in *Pauly v. Pauly*, 80 Ohio St.3d 386 (1997) and *Hubin v. Hubin*, 92 Ohio St.3d 240, 241 (2001), affirming *Hubin v. Hubin*, 10th Dist. No. 99AP-1156, 2000 WL 868590, on the authority of *Pauly*. We find this argument unpersuasive.

{¶ 35} R.C. 3119.24, which governs child support modifications in shared parenting cases, states:

> (A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.

(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:

(1) The amount of time the children spend with each parent;

(2) The ability of each parent to maintain adequate housing for the children;

(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;

(4) Any other circumstances the court considers relevant.

{¶ 36} The magistrate deviated from the child support schedules when modifying Father's child support order because she found that the scheduled amount "would be unjust and inappropriate and that a deviation is in the best interest" of the parties' minor child based upon the parties' equal parenting time with the child, the parties' standard of living and the factors contained in R.C. 3119.04. The magistrate deviated from the scheduled amount by running two child support calculations, one with Mother as the obligor and one with Father as the obligor, and then offsetting those calculations; Father was ordered to pay the difference. The magistrate determined that "offsetting the two child support obligations is in the child's best interest."

{¶ 37} Father argues the magistrate erred when she used an offset method to calculate the proper deviation from the scheduled amount of his child support obligation because the Ohio Supreme Court made it clear in *Pauly* that the offset method was not to be used in shared parenting cases and is applicable only in "split parenting arrangements" where there are two or more children and each parent is the residential parent of one of the

children.

{¶ 38} The *Pauly* case based upon analysis of R.C. 3113.215, which has been repealed. Further, there is nothing in R.C. 3119.24 or *Pauly* that prohibits a domestic relations court from using the offset method in shared parenting cases as a *guide* to determining the appropriate *deviation* from the scheduled amount of child support once the domestic relations court has determined that the scheduled amount is unjust and inappropriate and not in the best interest of the child and that use of the offset method *is* in the best interest of the child. *See MacDonald v. MacDonald*, 8th Dist. No. 96099, 2011-Ohio-5389, ¶ 28 ("R.C. 3119.24 does not prohibit the trial court from using the split-parenting worksheet as a guide."). Father's second assignment of error is therefore overruled.

{¶ 39} In his third assignment of error, Father contends that the domestic relations court erred in modifying, *sua sponte*, the provision in the parties' original shared parenting plan regarding their minor child's uninsured medical expenses because this issue was not raised by either party in their motions to modify and thus was not properly before the domestic relations court, and the domestic relations court offered no explanation as to why it modified this provision. Father therefore contends that the domestic relations court abused its discretion by modifying this provision. This argument lacks merit. Under R.C. 3119.30(A), the domestic relations court had continuing authority to modify, *sua sponte*, the parties' obligations regarding the medical bills of their minor child. Consequently, Father's third assignment of error is overruled.

{¶ 40} In her cross-assignment of error, Mother argues the domestic relations court erred by not eliminating her obligation to pay $200 per month from the amount of child support she receives from Father into a 529 plan for the parties' minor child, since the trial court reduced the amount of child support she receives, and "the parties did not agree to the

- 11 -

$200 deposit before or at the hearing." We disagree with this argument.

{¶ 41} In overruling Mother's objection to the magistrate's decision on this issue, the domestic relations court agreed with the magistrate that Mother presented "little to no evidence" on this issue at the hearing and that, while Mother acknowledged at the hearing that she paid into the 529 plan for the benefit of the parties' minor child, she made no specific request to eliminate or reduce that obligation.

{¶ 42} The record supports the domestic relations court's finding that Mother did not request termination of her obligation to pay $200 per month from the child support she receives from Father into a 529 plan for the parties' minor child until *after* the magistrate issued its decision on the parties' motions to modify. Mother had ample opportunity to present her request to terminate her obligation to pay $200 from the child support she receives from Father into a 529 plan for the parties' minor child, and present evidence in support of that request, during the proceedings but failed to do so in a timely manner.

{¶ 43} Furthermore, the transcript of the evidentiary hearing held before the magistrate supports the determination that Mother presented "little to no evidence" to support the claim she made in her initial objections to the magistrate's initial decision, i.e., with the reduction in Father's child support obligation, "all of the [child] support [that Mother receives] at this point is necessary for the immediate needs of the [parties' minor] child."

{¶ 44} In light of the foregoing, we conclude that the domestic relations court did not err in overruling Mother's request to terminate her obligation to pay $200 from the child support she receives from Father into a 529 plan for the parties' minor child. Mother's cross-assignment of error is overruled.

**{¶ 45}** The judgment of the domestic relations court is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.


PIPER and M. POWELL, JJ., concur.