[Cite as *Combs v. Ellington*, 2022-Ohio-3514.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| KATHLEEN COMBS, | : | |
| Appellee, | : | CASE NO. CA2022-01-001 |
| | : | O P I N I O N |
| - vs - | | 10/3/2022 |
| | : | |
| JAMES ELLINGTON, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR16-07-0734

Auciello and Evans Law, LLP, and Jeremy J. Evans for appellee.

Law Office of Kristen L. Campbell, LLC, and Kristen L. Campbell, for appellant.

**HENDRICKSON, J.**

{¶ 1}　Appellant, James Ellington ("Father"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, that modified his child support obligation to appellee, Kathleen Combs ("Mother"). For the reasons that follow, we affirm the trial court's decision.

{¶ 2}　On November 4, 2009, the parties had twin boys. The parties subsequently

married in April 2012. On September 13, 2016, they divorced. The final decree of divorce incorporated and adopted an agreed upon shared parenting plan that named both parties the residential parents of the children. Under the shared parenting plan, Father's parenting time during the school year was allocated on a two-week repeating schedule that resulted in him having 5 overnights with the children every 14 days. Specifically, in Week 1, Father's parenting time began Thursday at 6:00 p.m. and ended Monday morning at 8:00 a.m. when the children were transported to school or daycare. In Week 2, his parenting time began Thursday at 6:00 p.m. and ended Friday morning at 8:00 a.m. when the children were transported to school or daycare. During the summer months, the shared parenting plan provided the parties with alternating weeks with the children, "whereby Mother has the children for the first full week of summer and the last full week of summer." The parties agreed to pay any daycare costs for the children equally. Further, absent mutual agreement, each party was responsible for transporting the children at the beginning of their own parenting time.

{¶ 3} Under the shared parenting plan, Father was named child support obligor. Using Father's adjusted gross income of $54,714.04 and Mother's adjusted gross income of $34,300, child support was calculated pursuant to the child support guidelines at a total of $763.57 per month, which represented $748.60 in child support, $0 in cash medical support, and $14.97 in statutory processing charges. Father was responsible for providing private health insurance for the children, which cost him $955.24 annually. The parties were ordered to split all copays for the children equally; however, Mother was ordered to pay 100 percent of any deductible costs and any other uncovered healthcare expenses. Mother was also ordered to pay 100 percent of "any and all agreed upon activity and extracurricular costs for the minor children."

{¶ 4} The parties operated under the terms of the shared parenting plan without

incident for a number of years. Then, on April 9, 2020, Father filed three motions with the trial court, consisting of a motion for contempt of parenting time, a motion for attorney fees and costs, and a motion to modify parenting time. A little over a month later, on June 25, 2020, Mother filed eight motions with the trial court, including two motions for contempt, a motion for attorney fees and costs, a motion to modify parenting time, and four motions to modify provisions of the shared parenting plan relating to daycare, medical expenses, transportation, and methods of communication amongst the parties.

{¶ 5} The parties were ultimately able to resolve the aforementioned motions by agreement. On September 21, 2020, a magistrate adopted the parties "Joint Stipulations/Agreement" as a magistrate's decision. Pursuant to the September 21, 2020 magistrate's decision, Father's parenting time during the school year was modified so that he would get an additional two nights with the children over the course of two weeks, for a total of 7 overnights every 14 days. Specifically, the modified parenting schedule provided that Father would have parenting time in Week 1 at the end of the school day on Wednesday until the beginning of the school day on Friday. In Week 2, Father would have parenting time at the end of the school day on Wednesday until the beginning of the school day on Monday.[1] During the summer months, parenting time would rotate weekly between Mother and Father, with exchanges occurring on Sundays at 6:00 p.m.

{¶ 6} The September 21, 2020 magistrate's decision also addressed communication issues and expenses for childcare and medical expenses not covered by insurance. The decision specified that the parties were to use Our Family Wizard to communicate with one another and provided that the party who did not have parenting time

---

1. Father's weekly parenting time schedule would change slightly on remote learning days caused by the COVID-19 pandemic. The September 21, 2020 magistrate's order provided, "[d]uring the current pandemic, while [the children's] schools are on a part-time in person attendance and part-time remote learning program, Father shall provide childcare for the children by picking them up from Mother's residence on Wednesday mornings at 6:30 a.m."

with the children on a school day had the right to a 30-minute video call commencing at 8:00 p.m.  As for childcare expenses, the parties were ordered to equally pay the expenses, except Mother was solely responsible for the expense of summer childcare at the YMCA that exceeded four weeks in duration.  As for medical expenses, Mother would no longer be responsible for 100 percent of the deductible costs and other uncovered healthcare expenses.  Rather, Mother would be solely responsible for the first $500 of uninsured medical expenses that were not copays and, after that sum had been paid, the parties would be equally responsible for uninsured medical expenses.  Copays would continue to be split equally between the parties.

{¶ 7}  Neither the parties "Joint Stipulations/Agreement" nor the September 21, 2020 magistrate's decision addressed child support in any manner.  On October 8, 2020, the trial court adopted the September 21, 2020 magistrate's decision as an order of the court.  Four days later, on October 12, 2020, Father filed a motion to modify child support, arguing that with the changes in parenting time and expense sharing a modification of his child support obligation was warranted.  Father contended his child support obligation should be recalculated using an "offset calculation," whereby child support was calculated twice – once with Mother as the obligor and once with Father as the obligor and then Mother's lesser obligation subtracted (offset) from his higher obligation to arrive at his total obligation.

{¶ 8}  A hearing on Father's motion was held before a magistrate on February 17, 2021.  The magistrate took the matter under advisement and on May 11, 2021, issued a decision modifying child support, although not in the manner Father advocated.  After noting that Father's child support obligation had not been administratively or judicially modified in nearly five years, the magistrate found that the parties' finances had changed and there was a substantial change of circumstances warranting recalculation as contemplated by

R.C. 3119.79(A).[2]

{¶ 9}   The magistrate found that Father had been working for his employer for over two years, earning $31.70 per hour for regular hours and $47.55 for overtime hours.  Over the past two years, Father had averaged between $10,000 and $11,000 in overtime and bonuses combined.  In 2020, Father's gross income was $79,060.45, of which $10,244.74 was overtime earnings and $640.00 was income in the form of bonuses.  Father had remarried and resided with his new spouse and an adopted child.  Through his employment, Father had medical, dental, and vision insurance coverage for the two children he shared with Mother.  The annual cost for such insurance was $2,484.56.

{¶ 10} Mother was employed and was earning $22.2765 per hour.  In 2020, Mother's gross income was $50,335.12, of which $4,000 was a bonus.  Mother was eligible for a bonus every year, but the amount of the bonus varied and depended upon her employer's profitability.  Though Mother had not remarried, she was cohabiting with a paramour.  In addition to the two children Mother shared with Father, Mother had two other biological children for whom she paid child support.

{¶ 11} Using the parties' financial information, the magistrate conducted a guideline support calculation with Father as the obligor and determined Father's annual obligation was $11,412.03 in child support.  However, the magistrate determined that Father was entitled to a 10 percent downward deviation from the guideline support for extended parenting time under R.C. 3119.051(A), as Father's parenting time exceeded 90 overnights.  Though Father argued for an additional downward deviation pursuant to R.C. 3119.231 as his parenting time exceeded 147 nights per year, the magistrate denied Father's request,

---

2. "R.C. 3119.79(A) provides that a substantial change of circumstances occurs when a court recalculates the actual annual obligation required pursuant to the schedule and worksheet and the resulting amount is ten percent greater or lesser than the existing actual annual child support obligation."  *Kairn v. Clark*, 12th Dist. Warren Nos. CA2013-06-059 and CA2013-08-071, 2014-Ohio-1890, ¶ 21.

finding it was not reasonable, appropriate, or in the children's best interest.

{¶ 12} In denying the additional downward deviation, the magistrate noted that Father had significantly more income than Mother ($70,414 as an adjusted gross income compared to Mother's adjusted gross income of $44,851) and was in a better position to absorb any additional costs associated with his increased parenting time. Of the parties' combined annual gross income, Mother earned only 38.91 percent, whereas Father earned 61.09 percent. The magistrate noted that pursuant to the terms of the modified shared parenting plan, Mother pays half of the childcare expenses, the first $500 of uninsured medical expenses, and half of the uninsured medical expenses exceeding $500 per year, which is more than she would otherwise pay based on the parties' respective percentages of income. The magistrate also commented on the timing of Father's request for lower child support, stating, "Father did not seek a downward deviation at the time he agreed to the extra parenting time he now advances as the basis for the request for a reduction in child support. * * * If Father felt the extra parenting time would be a financial burden, he should have raised and addressed the issue at the time." Accounting for the 10 percent statutory deviation set forth in R.C. 3119.051(A), Father's support obligation was reduced to a total of $913.39 per month, which represented $855.90 per month in child support, $39.58 per month in cash medical support, and $17.91 per month as a processing charge.

{¶ 13} On May 17, 2021, Father simultaneously filed a request for the transcript of the February 17, 2021 hearing and an objection to the magistrate's decision on child support, contending the magistrate erred by not awarding an additional deviation beyond the statutorily mandated 10 percent. On July 13, 2021, Father filed an "Amended Objection to Decision of Magistrate and Notice of Intent to Introduce Supplemental Evidence." In addition to arguing that the evidence submitted at the February 17, 2021 hearing supported an additional downward deviation of his child support, Father contended that there was

"newly discovered evidence" that Mother's two biological children from another relationship were in the process of being adopted by their stepmother, which would end Mother's child support obligation for those children. Father wished to present evidence of how this would affect Mother's financial situation.

{¶ 14} The parties appeared before the court at an objection hearing. At this time, they agreed that Mother would not be given credit in the child support worksheet for the two children from another relationship who no longer lived with her. The trial court updated the child support worksheet, removing these two children from the worksheet. The court also updated Father's income upon noting that "a review of [Father's] pay receipt in evidence reveals that he was on track with overtime to earn closer to $11,000 rather than $10,000, which does not include the bonus listed. The Court finds [Father] will earn $11,640 in bonus and overtime." Using the updated information, the trial court calculated guideline child support and found Father's monthly support obligation was $1,004.55, which included $946.91 in child support, $37.94 in cash medical support, and $19.70 in processing fees. However, given Father's parenting time exceeded 90 overnights, Father was entitled to a 10 percent deviation. The court further found "it was in the children's best interest for [Father's] cash medical obligation to be deviated downward in the difference of $277.40 annually, reduced by his percentage of the combined income (58.56%), or $13.54 per month."[3] The court denied Father's request, however, for an additional downward deviation of his child support obligation under R.C. 3119.231, agreeing with the magistrate that it would not be reasonable, appropriate, or in the children's best interest given "the disparity of incomes between the parties, and [Mother's] payment of school fees, clothing and other

---

3. Removing Mother's two other children from the child support worksheet and updating Father's overtime and bonus income affected the parties share of their combined annual gross income. Mother now earned 41.44 percent and Father earned 58.56 percent.

living expenses" for the children – expenses that Mother paid equally with Father despite only having 41.44 percent of share of their combined income. The court, therefore, ordered Father to pay a total of $894.15 a month to Mother, which represented $852.22 in child support, $24.40 in cash medical support, and $17.53 in statutory processing charges.

{¶ 15} Father timely appealed the court's decision granting a modification of child support, raising the following as his sole assignment of error:

{¶ 16} THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE APPROPRIATE CHILD SUPPORT DEVIATION.

{¶ 17} Father contends the trial court erred in modifying his child support obligation as the record supports granting him more than the mandatory 10 percent deviation set forth in R.C. 3119.051(A).

{¶ 18} "A domestic relations court has wide discretion regarding child support obligations, and the decision of the trial court will not be disturbed absent an abuse of discretion." *Lykins v. Lykins*, 12th Dist. Clermont No. CA2020-03-009, 2021-Ohio-274, ¶ 34, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion is more than an error of law; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 19} "In considering a request for modification of a prior child support order, a domestic relations court must first determine if a change of circumstances exists." *McNabb v. McNabb*, 12th Dist. Warren Nos. CA2012-06-056 and CA2012-06-057, 2013-Ohio-2158, ¶ 27. Pursuant to R.C. 3119.79(A),

> If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet. *If that amount as recalculated is more than ten per cent greater than or more than ten per cent less*

*than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.*

(Emphasis added.)

**{¶ 20}** "[Where] the domestic relations court finds that a change of circumstances has occurred, it must then determine the appropriate amount of child support." *McNabb* at ¶ 29. Where a shared parenting plan is involved, the court

shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet, except that, if that amount would be unjust or inappropriate to the children or either parent and therefore not in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

R.C. 3119.24(A)(1).

**{¶ 21}** Pursuant to R.C. 3119.051(A), a court shall reduce a parent's child support order by 10 percent if the court has issued an order directing parenting time that equal or exceeds 90 overnights per year. If the parent's parenting time exceeds 90 overnights per year, the court has the discretion to grant an additional deviation under R.C. 3119.231(A). R.C. 3119.231 works in combination with R.C. 3119.22 and 3119.23, which are statutes that "address a court's discretion to grant a deviation from a child support obligation after consideration of factors set forth in R.C. 3119.23 and upon a finding that child support according to the child support schedule and worksheet would be 'unjust, inappropriate and therefore not in the best interest of the child.'" *In re M.C.*, 12th Dist. Clermont No. CA2021-03-010, 2021-Ohio-3703, ¶ 9. "Extended parenting time or extraordinary costs associated with parenting time, including extraordinary travel expenses when exchanging the child or children for parenting time" is one of the factors the trial court is to consider in deciding to

grant a deviation. R.C. 3119.23(C). Other factors the court can consider in determining whether to grant a deviation include, but are not limited to, "[t]he relative financial resources, including the disparity in income between the parties or households," "[b]enefits that either parent receives from remarriage or sharing living expenses with another person," and "[t]he standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued." R.C. 3119.23(E), (G) and (K). If court-ordered parenting time is equal to or exceeds 147 overnights per year and the court does not grant a deviation beyond the 10 percent mandated by R.C. 3119.051(A), the court "shall specify in the order the facts that are the basis for the court's decision." R.C. 3119.231(B).

{¶ 22} The record reflects, and Father does not dispute, that there was a change of circumstances justifying modification of child support under R.C. 3119.79(A) as the recalculated child support computation is more than ten per cent greater than the amount of child support required to be paid under the court's September 2016 child support order. Father contends, however, that the amount of child support the trial court ordered Father to pay was not appropriate as the court failed to award a deviation beyond the 10 percent mandated by R.C. 3119.051(A). Father argues that his extended parenting time, which exceeds more than 147 nights per year, the costs associated with that extended parenting time, and the split of childcare, healthcare, and transportation costs under the shared parenting plan all support granting him an additional deviation in child support.

{¶ 23} Our review of Father's argument is impeded by Father's failure to file the transcript of the February 17, 2021 hearing on the motion to modify child support. Pursuant to App.R. 9(A)(1), "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." The party appealing has the duty to provide a transcript for appellate review

as the appealing party bears the burden of showing error in the underlying proceeding by reference to matters in the record. *Dudley v. Dudley*, 12th Dist. Butler No. CA2013-09-163, 2014-Ohio-3992, ¶ 25, citing App.R. 9(B) and 16(A)(7).

{¶ 24} When Father filed his notice of appeal, he included a request that the appeal be put on the accelerated calendar. In doing so, Father advised the court, pursuant to Loc.R. 5(A), that "no transcript of proceedings or narrative statement or agreed statement as described in App.R. 9 will be filed, or such transcript or narrative statement is already part of the trial court record." However, the certified copy of the docket and journal entries prepared by the clerk of the trial court does not indicate that the transcript of the February 17, 2021 hearing was ever filed in the trial court. Furthermore, the transcript was not physically part of the record transmitted for our review.

{¶ 25} Though Father filed a request for the transcription of the February 21, 2021 hearing, and there is an entry indicating the transcript had been completed and was awaiting payment, there is no indication on the docket that the transcript was ever *filed* with the court.[4] Civ.R. 53(D)(3)(b)(iii) placed the burden on Father, as the party objecting to the magistrate's decision, to "file the transcript * * * with the court within thirty days after filing objections." As a transcript of the February 17, 2021 hearing was never filed in the trial court, it is not part of our record on appeal.

{¶ 26} When portions of the transcript necessary for resolution of an assigned error are omitted from the record on appeal, the reviewing court has nothing to pass upon and thus has no choice but to presume the regularity or validity of the lower court's proceedings and affirm. *Whaley v. Young*, 12th Dist. Butler No. CA2019-11-189, 2020-Ohio-2981, ¶ 14,

---

4. We recognize that the trial court, in ruling on Father's objections to the magistrate's decision, indicated it had "carefully reviewed the record of the case, *the transcript*, the Magistrate's Decision, the evidence presented to the Magistrate, Counsel's argument, and the applicable case law, de novo." (Emphasis added.) While it is possible that an undocketed transcript was provided to the trial court, no such transcript physically appeared in the record transmitted for our review.

citing *Spicer v. Spicer*, 12th Dist. Butler No. CA2005-10-443, 2006-Ohio-2402, ¶ 5. Accordingly, given the absence of an appropriate record to support Father's alleged error regarding the trial court's modification of his child support obligation, we presume the regularity of the proceedings and overrule his arguments.

{¶ 27} Father's sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.