[Cite as *Jestice v. Jestice*, 2024-Ohio-122.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JULIE R. JESTICE, | : | |
| Appellant, | : | CASE NO. CA2023-07-072 |
| | : | O P I N I O N |
| - vs - | | 1/16/2024 |
| | : | |
| ANDREW J. JESTICE, | : | |
| Appellee. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR01081124

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

Schiavone Law Firm, LLC, and Frank J. Schiavone IV, for appellee.

**S. POWELL, P.J.**

{¶ 1} Appellant, Julie R. Jestice ("Mother"), appeals from a post-divorce decree decision issued by the Butler County Court of Common Pleas, Domestic Relations Division, finding her voluntarily unemployed and imputing $29,371.70 in income to her for child support purposes. Mother also appeals the domestic relation court's decision denying her request for her ex-husband, appellee, Andrew J. Jestice ("Father"), to pay her attorney fees.

For the reasons outlined below, we affirm the domestic relations court's decisions in each of these respects.

**Facts and Procedural History**

{¶ 2}   Mother and Father were married in Cincinnati, Ohio on June 22, 1991.  There were two children born issue of the marriage, boys, David, born on July 25, 1994, and Daniel, born on June 13, 1998.  Mother and Father were thereafter divorced upon the domestic relations court issuing a decree of divorce on November 6, 2001.  Within that divorce decree, Mother was named the residential parent of both children and Father was ordered to pay child support to Mother in the amount of $397.48 per month, per child.  This initial figure was calculated based upon Mother's and Father's then adjusted gross annual incomes of $35,000 and $36,238, respectively.

{¶ 3}   On November 2, 2012, Father filed a motion to modify child support given the elder child, David, was living with him rather than Mother.  A domestic relations court magistrate issued a decision on January 17, 2013, recommending Father's motion be granted, thereby reducing Father's child support obligation for David to just $51.86 per month.  This figure was calculated based upon Mother's and Father's then adjusted gross annual incomes of $60,502.86 and $63,028.46, respectively.  Neither Mother nor Father objected to the magistrate's decision.  The domestic relations court thereafter affirmed and adopted the magistrate's decision on February 4, 2013.

{¶ 4}   On May 17, 2013, Mother filed her own motion to modify child support. Mother did this in anticipation of their son David's upcoming graduation from high school, thus triggering his emancipation.  A domestic relations court magistrate issued a decision on June 24, 2013, recommending Mother's motion be granted, thereby eliminating Father's child support obligation for David and setting Father's child support obligation for Daniel at $574.44 per month.  This figure was calculated based upon Mother's and Father's then

adjusted gross annual incomes of $66,613.14 and $63,604.72, respectively.[1]  Again, neither Mother nor Father objected to the magistrate's decision.  The domestic relations court thereafter affirmed and adopted the magistrate's decision on January 15, 2014.

{¶ 5}  On June 5, 2017, Mother filed a motion pursuant to R.C. 3119.86(A)(1)(a) requesting Father's child support obligation for Daniel be extended "past the age of majority and what would otherwise be the child's emancipation."  To support this motion, Mother argued that Daniel was "permanently disabled" and that, "because of his mental and physical disabilities that existed before the age of majority," Daniel would "more likely than not ever be able to support himself."  Mother also argued that Daniel was not at that time able to be self-sufficient or self-sustaining, nor would he be at any point in the foreseeable future.

{¶ 6}  On March 9, 2018, a domestic relations court magistrate issued a decision recommending Mother's motion be granted upon finding Daniel was "presently, and for the foreseeable future, disabled and incapable of self-support."[2]  The magistrate then set Father's child support obligation for Daniel at $720.01 per month to "continue indefinitely until further order of the Court."  This figure was calculated based upon Mother's and Father's then adjusted gross annual incomes of $29,371.70 and $73,159.72, respectively.[3]  Once again, neither Mother nor Father objected to the magistrate's decision.  The domestic

---

1. The record indicates that Mother was at that time employed full-time as a teacher with Butler Tech who also taught Zumba classes on the side.

2. The record indicates that Daniel has been diagnosed with autism, severity level one, which prevents him from maintaining effective verbal communication with others.  Daniel's autism also makes him sensitive to bright lights, noise, and gives him a low tolerance threshold that results in him becoming easily aggravated or frustrated, thus impeding his ability to function.

3. The record indicates that Mother last worked at Butler Tech on December 20, 2014, having up to that point earned $40,023 for the year.  The previous year, in 2013, Mother earned $57,727 from her employment at Butler Tech.  This was Mother's last year of full-time employment.  The magistrate took judicial notice of the amount imputed to Mother by the Butler County Child Support Enforcement Agency for the year 2015 when finding Mother's adjusted gross annual income to be $29,371.70.

relations court thereafter affirmed and adopted the magistrate's decision on March 27, 2018.

{¶ 7} On April 27, 2021, Father filed his second motion to modify child support. To support this motion, Father noted that, in the three years since the domestic relations court had issued its child support order for Daniel, Daniel had completed a training program and had obtained gainful employment working 32 hours per week at Amazon for $16.50 per hour. Father also noted that Mother had since remarried. This was in addition to Father noting that Mother was receiving Daniel's monthly social security benefits, as well as the $720.01 per month he was paying in child support, and that it was him, rather than Mother, who was paying for Daniel's health insurance.[4]

{¶ 8} On June 7, 2021, Mother responded to Father's motion, requesting the domestic relations court order Father to pay her attorney fees "for having to defend and obtain the extension of support orders." The following month, on July 16, 2021, Mother filed an additional motion requesting the domestic relations court increase Father's child support obligation for Daniel given the changes in their respective incomes. Shortly thereafter, on September 1, 2021, a domestic relations court magistrate held a hearing on the matter. The record does not contain a transcript of this hearing, nor does the record contain a transcript of any other hearing conducted in this case.

{¶ 9} On September 21, 2021, the magistrate issued a decision reducing Father's child support obligation to zero. The magistrate did this after finding Father's gross annual income to be $83,602.38 and imputing $29,371.70 in income to Mother. The magistrate determined that imputing Mother with that amount of income was appropriate because, although "Mother believes she can work," likely in substitute teaching, "she does not do so

---

4. The record indicates that Daniel was paid $903 in social security benefits per month, which increased to $1,089 per month effective January 1, 2023. Mother receives this money in a representative payee account that she then transfers to Daniel's own personal account. From there, the record indicates that Daniel puts the money transferred to him by Mother onto a prepaid debit card that he uses to make purchases for himself.

in case Daniel may need something." The magistrate also determined that Mother's purported health issues, which the record indicates include Mother experiencing "mild" clinical depression, ADHD, and narcolepsy, "do not affect her ability to parent Daniel." The magistrate further denied Mother's request for attorney fees upon finding that, in light of the facts and circumstances presented, it was "equitable" for Mother to pay her own attorney fees in this case.

{¶ 10} On October 5, 2021, Mother filed objections to the magistrate's decision. This included objections to both the magistrate's "methodology used to calculate child support," as well as the magistrate's decision to impute $29,371.70 in income to Mother given that Mother was not employed and had not been employed for several years. Mother also objected to the magistrate's decision denying her request for attorney fees. Mother thereafter moved the domestic relations court to "reopen the evidence, and/or admit additional evidence" for purposes of ruling on her objections to the magistrate's decision. To support this claim, Mother noted that shortly after the magistrate had issued its decision, Daniel had, "as predicted," lost his job at Amazon "due to excessive absenteeism and discipline issues."

{¶ 11} On August 11, 2022, the domestic relations court issued an entry affirming and adopting the magistrate's decision "with respect to the analysis of the parties' incomes and request for attorney fees." However, as it relates to the magistrate's decision reducing Father's child support obligation to zero, the trial court overruled the magistrate's decision, reinstated Father's child support obligation, and remanded the matter to the magistrate for further proceedings. In so doing, the domestic relations court instructed the magistrate to "consider deviation factors under R.C. 3119.23." R.C. 3119.23 sets forth a number of factors the domestic relations court may consider when determining whether to grant a deviation from the amount of child support that would otherwise result from the use of the

basic child support schedule and the applicable worksheet under R.C. 3119.22.[5] The factors set forth in R.C. 3119.23 include, but are not limited to, any special and unusual needs of the child, the financial resources and the earning ability of the child, and the disparity in income between parties. R.C. 3119.23(A), (D), and (E).

{¶ 12} On November 29, 2022, the magistrate held another hearing on the matter. The record, as noted above, does not contain a transcript of this hearing.

{¶ 13} On December 7, 2022, the magistrate issued a decision recommending the domestic relations court reduce Father's child support obligation to $72.30 effective for the period between April 27, 2022 to December 31, 2022, and then down to zero effective January 1, 2023. The magistrate also reiterated its findings set forth in its original decision with respect to Mother's and Father's incomes and Mother's request for attorney fees. In so doing, the magistrate initially determined that, "[a]t the time of the last modification of support Mother was not working and was imputed $29,371.70. Mother was in the same situation then that she is today." This is in addition to the magistrate finding:

> Until 2015 Mother was working and providing Daniel with financial, physical, and emotional support. Since 2015 she has relied on her husband, Father, social security, and Daniel's job to provide Daniel with financial support. Mother testified that she believes that she can work at this time; however, she opts to stay home in case Daniel needs her assistance. Daniel is not working at this time and when he was working he has transportation to and from work. Although he made (sic) need a reminder to take his medicine and assistance in handling his finances there is no evidence that Daniel needs round the clock supervision. Having a "child" in her home does not render Mother unable to work. Additionally, Mother did not provide any medical documentation that she is unable to work.

{¶ 14} On December 20, 2022, Mother filed another objection to the magistrate's

---

5. Pursuant to R.C. 3119.22, a domestic relations court can order a child support order that deviates from the general guidelines if, after considering the relevant factors set forth in R.C. 3119.23, the amount "would be unjust or inappropriate and would not be in the best interest of the child."

decision raising the same three basic arguments that she had raised with respect to the magistrate's original September 21, 2021 decision. Those being, an objection to the magistrate's "methodology used to calculate child support," the magistrate's decision to impute $29,371.70 in income to her, and the magistrate's decision to deny her request for attorney fees.

{¶ 15} On June 6, 2023, the domestic relations court issued a decision overruling the magistrate's decision. In so holding, the domestic relations court first echoed its previous decision with respect to Mother's and Father's respective incomes and Mother's request for attorney fees. The domestic relations court then noted its disagreement with the magistrate's recommendation to reduce Father's child support obligation to zero upon finding the benefits that Daniel received from social security "provided an offset of same against both parents' support obligations." The domestic relations court instead determined that it was "improper to determine social security benefits received by a disabled child [served] as a financial resource justifying a deviation from the basic child support schedule." This is because, as the domestic relations court found, "Daniel's social security benefits are intended to supplement the parents' obligation of support and not reduce it." The domestic relations court then determined that, even though Mother was receiving Daniel's monthly social security benefits, Father still had an obligation to pay $521.69 per month in child support for Daniel.

{¶ 16} On July 5, 2023, Mother filed a timely notice of appeal from the domestic relations court's decision. Oral argument was thereafter held before this court on December 11, 2023. Mother's appeal now properly before this court for decision, Mother has raised two assignments of error for review.

**Assignment of Error No. 1:**

{¶ 17} THE TRIAL COURT ERRED IN IMPUTING INCOME TO THE

- 7 -

UNEMPLOYED CHILD SUPPORT OBLIGEE [MOTHER].

{¶ 18} In her first assignment of error, Mother argues the domestic relations court erred by finding she was voluntarily unemployed and by imputing $29,371.70 in income to her for child support purposes. We address each of Mother's two arguments separately.

*No Error Finding Mother was Voluntarily Unemployed*

{¶ 19} Mother initially argues the domestic relations court erred by finding she was voluntarily unemployed. We disagree.

{¶ 20} "Pursuant to R.C. 3119.01(C)(11), before a trial court may impute income to a parent for purposes of computing child support, it must first find that the parent is voluntarily unemployed or voluntarily underemployed." *Courtney v. Courtney*, 12th Dist. Warren Nos. CA2013-09-087 and CA2013-10-096, 2014-Ohio-4281, ¶ 11. "[W]hether a person is voluntarily unemployed and whether to impute income for purposes of child support involve issues of fact." *DiPasquale v. DiPasquale*, 12th Dist. Warren No. CA2016-04-024, 2016-Ohio-8457, ¶ 13, fn. 1. To that end, whether a person is voluntarily underemployed or voluntarily unemployed "are matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), paragraph one of the syllabus.

{¶ 21} "A determination with respect to these matters will only be reversed upon a showing of abuse of discretion." *McFarland v. McFarland*, 12th Dist. Butler No. CA2018-05-098, 2019-Ohio-2673, ¶ 11; *Daniel v. Hester*, 12th Dist. Butler No. CA2016-02-037, 2016-Ohio-7543, ¶ 11 ("[a] trial court's decision concerning whether a parent is voluntarily underemployed is a question of fact and will not be disturbed on appeal absent an abuse of discretion"). "An abuse of discretion is more than an error of law; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Combs v. Ellington*, 12th Dist. Butler CA2022-01-001, 2022-Ohio-3514, ¶ 18, citing *Blakemore v. Blakemore*, 5 Ohio St.3d

217, 219 (1983). "A decision is 'unreasonable' when there is no sound reasoning process to support it." *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 12.

{¶ 22} Mother argues it was error for the domestic relations court to find her voluntarily unemployed because there was no evidence to indicate that "there is any job *opportunity* for her" to make $29,371.70 in income, "much less that she is voluntarily turning down at any level of income." (Emphasis sic.) However, as set forth in the domestic relations court's decision, the record in this case indicates that "Mother testified that she believes that she can work at this time," but instead "opts to stay home in case Daniel needs her assistance." The domestic relations court's decision also indicates that, although Daniel may "need a reminder to take his medicine and assistance in handling his finances," there is no evidence in the record to indicate Daniel "needs round the clock supervision." This is in addition to the domestic relations court decision finding that simply "[h]aving a 'child' in her home does not render Mother unable to work."

{¶ 23} We find no error in the domestic relations court's decision. That is to say, given the record in this case, the domestic relations court's decision finding Mother voluntarily unemployed was not an abuse of discretion. This is particularly true here when considering the domestic relations court's finding Mother had not "provide[d] any medical documentation that she is unable to work." In so holding, we note that the record does not contain transcripts of any of the domestic relations court's various hearings held in this matter. "Under these circumstances, we must presume the regularity of the proceedings below and affirm the domestic relations court's decision." *Jones v. Jones*, 12th Dist. Warren No. CA2021-05-045, 2022-Ohio-1986, ¶ 16. Therefore, given the record in this case, Mother's first argument challenging the domestic relations court's decision finding her voluntarily unemployed lacks merit.

*No Error Imputing $29,371.70 in Income to Mother*

{¶ 24} Mother also argues the domestic relations court erred by finding income should be imputed to her in the amount of $29,371.70. We again disagree.

{¶ 25} For purposes of calculating child support obligations, it is well established that the domestic relations court must determine the annual income for each parent. *Jestice v. Jestice*, 12th Dist. Butler No. CA2013-07-133, 2014-Ohio-3777, ¶ 8. For a parent who is either voluntarily underemployed or voluntarily unemployed, such as Mother in this case, the term "income" consists of the sum of the gross income of the parent, and any "potential income" of the parent. *Id.* Pursuant to R.C. 3119.01(C)(18)(a), "potential income" includes imputed income that the domestic relations court determines the parent would have earned if fully employed based upon the following ten factors:

> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in which the parent resides;
>
> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
>
> (vi) The parent's special skills and training;
>
> (vii) Whether there is evidence that the parent has the ability to earn the imputed income;
>
> (viii) The age and special needs of the child for whom child support is being calculated under this section;
>
> (ix) The parent's increased earning capacity because of experience;
>
> (x) The parent's decreased earning capacity because of a felony conviction.

{¶ 26} The domestic relations court may also consider any other factor(s) that it

deems relevant. R.C. 3119.01(C)(18)(a)(xi).

{¶ 27} Mother argues it was error for the domestic relations court to impute $29,371.70 in income to her because the domestic relations court "disregard[ed] Mother's actual income—zero." However, while it may be true Mother is not currently earning any actual income, the record in this case is devoid of any evidence to suggest Mother could not earn, at the very least, $29,371.70 in income if she reentered the workforce.[6] There is also nothing in the record to indicate that Mother is medically unable to work, either physically or mentally, or that Mother is otherwise prevented from working due to Daniel's special needs. That Mother has chosen, on her own volition, not to become fully employed does not mean that she is incapable of doing so, nor does it mean there are no employment opportunities available to Mother. For Mother to claim otherwise is without merit and not supported by the record. If anything, the record indicates that Mother could make more money than what the domestic relations court imputed to her given Mother's increased earning capacity because of her prior work experience as a teacher. Therefore, given the record in this case, Mother's second argument challenging the domestic relations court's decision to impute $29,371.70 in income to her also lacks merit. Accordingly, finding no merit to either of Mother's two arguments raised herein, Mother's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 28} THE TRIAL COURT ERRED IN DENYING THE CHILD SUPPORT OBLIGEE'S [MOTHER'S] MOTION FOR ATTORNEY FEES.

{¶ 29} In her second assignment of error, Mother argues the domestic relations court

---

6. As noted previously, the record indicates that Mother had been employed as a full-time teacher with Butler Tech. Mother is now married to a doctor who makes approximately $175,000 per year working with a hospice care provider in Cincinnati.

erred by denying her motion for attorney fees. We disagree.

{¶ 30} Pursuant to R.C. 3105.73(B), in any post-decree motion or proceeding that arises out of an action for divorce, a domestic relations court is authorized to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether such an award is equitable, the domestic relations court "may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." *Id.* However, although statutorily authorized to do so, the domestic relations court is not obligated to make such an award in every case. *Davis v. Davis*, 6th Dist. Wood No. WD-15-028, 2016-Ohio-1388, ¶ 31. The decision instead rests within the domestic relations court's sound discretion. *Theurer v. Foster-Theurer*, 12th Dist. Warren Nos. CA2008-06-074 and CA2008-06-083, 2009-Ohio-1457, ¶ 57. This necessarily means that the domestic relations court's "decision to award attorney fees will be reversed only if it amounts to an abuse of discretion." *Coomes v. Coomes*, 12th Dist. Clermont No. CA2019-10-076, 2020-Ohio-3839, ¶ 12.

{¶ 31} Mother argues it was error for the domestic relations court to deny her motion for attorney fees because she was "forced to defend her existing support order," merely because Husband, who has "a greatly superior income" to that of hers, "wanted out of his part of supporting their disabled unemancipated child." To support this claim, Mother argues that the domestic relations court denying her motion for attorney fees was fundamentally unfair given that most of the attorney fees she incurred were the result of her "preparing to defend" against Father's allegation that Daniel was no longer disabled, an allegation that Husband "entirely abandoned and stipulated to at the last minute—literally at the start of the hearing" that took place on November 29, 2022.

{¶ 32} However, while we can certainly understand why Mother would disagree with

the domestic relations court's decision to deny her motion for attorney fees, the domestic relations court's decision was nevertheless not an abuse of discretion. That is to say, the domestic relations court's decision to deny Mother's motion for attorney fees was not unreasonable, arbitrary, or unconscionable under the facts of this case. This holds true even if this court would have granted Mother's motion for attorney fees as it is well established that this court must not substitute its judgment for that of the domestic relations court. *See Lawson v. Taylor*, 105 Ohio App.3d 191, 194 (12th Dist.1995) ("[i]n reviewing a trial court's award of attorney fees, an appellate court will not substitute its judgment for that of the trial court unless the trial court's decision amounts to an abuse of discretion"). Therefore, given the record in this case, Mother's arguments challenging the domestic relations court's decision to deny her motion for attorney fees lacks merit. Accordingly, finding no merit to any of the arguments raised by Mother herein, Mother's second assignment of error also lacks merit and is overruled.

### Conclusion

{¶ 33} For the reasons outlined above, and having now overruled Mother's two assignments of error, Mother's appeal from the domestic relations court's decision finding her voluntarily unemployed and imputing $29,371.70 in income to her for child support purposes, as well as the domestic relations court's decision denying her motion for attorney fees, is denied.

{¶ 34} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.