[Cite as *Crawford v. Fisher*, 2015-Ohio-114.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Eric Crawford, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-366 |
| v. | : | (C.P.C. No. 11DR-4933) |
| Yandora Fisher, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 15, 2015

*Douglas W. Bulson, Jr.*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Eric Crawford ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the parties a divorce and designating defendant-appellee, Yandora Fisher ("appellee"), as the residential parent and legal custodian of the parties' minor child. Because we conclude that the trial court did not abuse its discretion in designating appellee as the residential parent and legal custodian and that the decision was not against the manifest weight of the evidence, we affirm.

{¶ 2} The parties were married in Franklin County, Ohio, in December 2005 and had one child, N.C., born in March 2006. In April 2008, appellee and N.C. moved to Arizona with John Knox ("Knox"). While living in Arizona, appellee and Knox had two children, A.K. and J.K. In August 2011, appellee and N.C. returned to live in Franklin County, Ohio.

{¶ 3} Appellant filed a complaint for divorce in December 2011, claiming mutual incompatibility and requesting that a legal custodian for N.C. be determined. Appellee filed an answer and counterclaim for divorce in February 2012. The parties entered into a divorce settlement memorandum that resolved all issues related to the divorce except for issues related to N.C. The trial court appointed a guardian ad litem for N.C. and conducted hearings in July 2013 and January 2014 to take evidence on the issues related to N.C. Appellant filed an amended complaint in February 2014, adding Knox as a defendant and requesting that the trial court determine the nonexistence of a parent-child relationship between appellant and J.K. or A.K. In March 2014, the trial court conducted a final hearing with appellant, appellee, and Knox present, limited to the issue of Knox's parental relationship with J.K. and A.K. Following the hearing, the trial court issued a judgment granting the parties a divorce, establishing the nonexistence of a parent-child relationship between appellant and J.K. or A.K., establishing the existence of a parent-child relationship between Knox and J.K. and A.K., and designating appellee as N.C.'s residential parent and legal custodian, subject to parenting time and other rights of appellant as defined in the judgment.

{¶ 4} Appellant appeals from the trial court's judgment, assigning four errors for this court's review:

> I. The Court committed error/abused its discretion in designating Defendant-Appellee as residential parent and legal custodian of the minor child.
>
> II. The Court's judgment naming Defendant Fisher as residential parent and legal custodian of the minor child is against the manifest weight of the evidence.
>
> III. The Court committed error/abused its discretion in conducting the final trial prior to the expiration of forty-two days after service of summons upon defendant John Knox.
>
> IV. The Court committed error/abused its discretion after Knox was added as a party by not granting plaintiff a continuance to have the opportunity to gather additional a [sic] evidence and have further investigation by the Guardian.

{¶ 5} Appellant's first and second assignments of error both address the trial court's decision to designate appellee as N.C.'s residential parent and legal custodian. Because these assignments of error are related and involve analysis of the same evidence, we will address them together. In his first assignment of error, appellant asserts that the trial court abused its discretion by designating appellee as N.C.'s residential parent and legal custodian. An abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A decision is unreasonable if there is no sound reasoning process that would support the decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard. *Porter, Wright, Morris & Arthur, LLP v. Frutta Del Mondo, Ltd.*, 10th Dist. No. 08AP-69, 2008-Ohio-3567, ¶ 11. An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness. *Id.*

{¶ 6} In appellant's second assignment of error, he asserts that the trial court's decision designating appellee as N.C.'s residential parent and legal custodian was against the manifest weight of the evidence. "The law is clear that, if a civil judgment is supported by some competent, credible evidence going to all of the essential elements of the case, there should not be a reversal by a reviewing court as being against the manifest weight of the evidence." *Cameron v. Cameron*, 10th Dist. No. 06AP-793, 2007-Ohio-3994, ¶ 16, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978). *See also Kellogg v. Kellogg*, 10th Dist. No. 04AP-382, 2004-Ohio-7202, ¶ 8 ("[A]n appellate court will not reverse a trial court's decision allocating parental rights and responsibilities when the record contains substantial competent, credible evidence to support the court's decision.").

{¶ 7} The law provides that, in a case such as this where neither parent files a pleading or motion requesting shared parental rights and responsibilities, "the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for care of the children." R.C.

3109.04(A)(1). The law sets forth a series of relevant factors the court must consider in determining the best interest of a child:

> In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is

the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶ 8} After reviewing the evidence, the trial court concluded that both appellant and appellee were good parents who each genuinely cared for their son. The court analyzed and discussed each of the relevant statutory factors in the decision. The court concluded that appellee had been the primary caretaker for N.C. since his birth. The court further noted that, although appellant had not been actively involved in N.C.'s care during the period immediately after N.C. was born and while appellee and N.C. lived in Arizona, he had more recently begun assisting in parenting N.C. At the hearings, the parties presented evidence regarding appellee's home, where N.C. had two siblings, A.K. and J.K., and regarding appellant's home, where N.C. had two other siblings, who were the children of appellant and his fiancée. The court concluded that N.C. had a good relationship with his two siblings in appellee's home as well as his other two siblings in appellant's home, but that he was more bonded to the siblings in appellee's home because they were closer in age and had lived together in Arizona.

{¶ 9} With respect to education and school issues, the court noted appellant's testimony that appellee was not involved in N.C.'s education but also cited testimony from N.C.'s teacher indicating that there was not a substantial difference between the households with respect to N.C.'s schoolwork and preparedness. The court found that

both households were appropriate for education purposes. The court concluded that appellee was more likely to facilitate N.C.'s relationship with appellant than vice versa. The court also noted the guardian's recommendation that appellant continue to be the school placement parent because N.C. was happy with his current school but concluded that N.C. would not be harmed by changing schools based on his grade and age, and that he would benefit from going to school with his siblings at appellee's home. The court ultimately concluded that appellant's fiancée and her mother took primary responsibility for N.C. when he was in appellant's home, thus leading the court to conclude that it was choosing between a parent and a parent's fiancée, rather than between two parents. Based on its review of the evidence and consideration of the statutory factors, the court ordered that appellee be designated as N.C.'s residential parent and legal custodian, subject to parenting time of appellant as outlined in the divorce decree.

{¶ 10} Appellant argues that the trial court's principal inquiry should have focused on the period after appellee and N.C. returned to Columbus from Arizona. He points to evidence demonstrating that appellee had multiple residences during a short period of time after returning to Columbus; whereas, he and his fiancée owned their home. Appellant also argues that there were substantial differences in N.C.'s educational experience between the two homes and that appellee was less involved in N.C.'s education. Appellant cites to other evidence that he claims demonstrates that he was the more suitable party to serve as residential parent and legal custodian. Finally, appellant asserts that the court did not give due deference to the guardian's recommendation that he should be the school placement parent.

{¶ 11} The decision indicates that the trial court found this to be a close case, with both parents demonstrating genuine care and concern for N.C., before ultimately deciding in favor of appellee. With respect to the guardian's recommendation that appellant serve as the school placement parent, we note that the trial court is not bound to follow the recommendations of a guardian ad litem. *See Lumley v. Lumley*, 10th Dist. No. 09AP-556, 2009-Ohio-6992, ¶ 46; *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 70. Therefore, we cannot conclude that the trial court abused its discretion simply by issuing a decision that differed from the guardian's recommendation. Similarly, we cannot conclude that the trial court abused its discretion by considering evidence related

to N.C.'s entire life, rather than focusing primarily on the period after appellee returned from Arizona. Further, while appellant can cite to portions of the testimony that weigh in his favor, the trial court found that other factors weighed in favor of appellee, including her constant presence throughout N.C.'s life and the close relationships N.C. has with his siblings in appellee's home. Based on our review of the decision and the evidence presented below, this was not a decision that lacked a sound reasoning process, nor one that lacked an adequate determining principle or affronted the sense of justice. Thus, the trial court's decision does not constitute an abuse of discretion. Likewise, we find that some competent, credible evidence going to all of the essential elements supported the decision, and, therefore, the decision was not against the manifest weight of the evidence.

{¶ 12} Accordingly, we overrule appellant's first and second assignments of error.

{¶ 13} In his third assignment of error, appellant asserts that the trial court erred by conducting the final hearing prior to the expiration of 42 days after service of summons on Knox. Appellant argues that the trial court violated Civ.R. 75(K) which provides, in relevant part, that "[n]o action for divorce * * * may be heard and decided until the expiration of forty-two days after the service of process." In this case, appellant filed his complaint for divorce on December 27, 2011. After service by certified mail failed, the clerk of courts served the complaint on appellee by regular mail on February 1, 2012. Appellee filed her answer and counterclaim for divorce on February 24, 2012, and it was sent by certified mail to appellant's attorney on February 27, 2012. Knox was added as a defendant in an amended complaint filed on February 20, 2014, which was served on Knox by certified mail on February 28, 2014. The trial court conducted the final hearing on March 14, 2014. Thus, appellant asserts that the trial court violated Civ.R. 75(K) by conducting the final hearing less than 42 days after service of the complaint on Knox.

{¶ 14} As the Fifth District Court of Appeals has noted, the 42-day rule under Civ.R. 75(K) is based on Ohio's now-repealed statutory "cooling-off" period between filing and hearing in divorce cases. *Clark v. Clark*, 5th Dist. No. 06 CA 8, 2006-Ohio-2902, ¶ 7, citing former G.C. 11985 and former R.C. 3105.09. The purpose of that cooling-off period "was to 'discourage precipitous terminations of the bonds of matrimony and encourage continuation of the family.' " *Id.*, quoting *Robinette v. Robinette*, 41 Ohio App.3d 25, 26 (5th Dist.1988).

{¶ 15} Given that nearly two years passed between the filing of the complaint and counterclaim for divorce and the final hearing in March 2014, the purpose of the 42-day waiting period had been fulfilled. Moreover, Knox was added as a defendant for the sole purpose of determining that there was no parent-child relationship between appellant and the two children who were products of the relationship between appellee and Knox. There was no connection between the addition of Knox as a party and the risk of a precipitous termination of the marriage between appellant and appellee. This court has concluded that the 42-day rule under Civ.R. 75(K) is procedural, rather than substantive, and does not deprive the domestic relations court of jurisdiction over a case. *Howell v. Howell*, 10th Dist. No. 13AP-961, 2014-Ohio-2195, ¶ 12. Under these circumstances, we conclude that the trial court's failure to strictly comply with Civ.R. 75(K) by waiting 42 days after the service of summons on Knox was harmless error. *See* Civ.R. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for * * * vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). *See also Nettle v. Nettle*, 9th Dist. No. 25001, 2010-Ohio-4638, ¶ 10 (concluding that the trial court complied with "the spirit of the rule, if not the letter").

{¶ 16} Accordingly, we overrule appellant's third assignment of error.

{¶ 17} In his fourth assignment of error, appellant argues that the trial court erred by denying his motion for continuance after Knox was added as a party. Generally, a trial court has broad discretion whether to grant a continuance, and we will not reverse a denial of a continuance absent an abuse of discretion. *State v. Burke*, 73 Ohio St.3d 399, 407 (1995). At the March 14, 2014 final hearing, appellant's counsel moved for a continuance in order for the guardian to be present and for the reopening of the evidence to allow further testimony and additional investigation by the guardian. The trial court denied the motion, noting that the guardian was not a necessary party because he was not the guardian for J.K. or A.K. The trial court also refused to reopen the evidence with respect to appellant, appellee, and N.C. The court indicated that the issues arising from

the addition of Knox as a defendant only involved his paternity of J.K. and A.K. and that it would only take additional testimony regarding those two children.

{¶ 18} We cannot conclude that denial of appellant's request for a continuance or reopening of the evidence was unreasonable, arbitrary, or unconscionable. The trial court correctly noted that the guardian was only appointed to represent N.C., not J.K. or A.K. Additionally, because Knox was added as a defendant for the sole purpose of establishing his paternity of J.K. and A.K., there was no need for the court to take additional evidence or testimony regarding the custody and care of N.C. Appellee had previously testified that Knox did not live in Columbus and that she was involved in a relationship with another individual. Moreover, the trial court had already taken testimony from appellant and appellee regarding N.C.'s interactions with Knox. Therefore, the trial court did not abuse its discretion by refusing to continue the hearing or reopen the evidence.

{¶ 19} Accordingly, we overrule appellant's fourth assignment of error.

{¶ 20} For the foregoing reasons, we overrule appellant's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

_____