[Cite as *Dickenson v. Jackson*, 2024-Ohio-1236.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


CHRISTOPHER DICKENSON,                 :

    Appellee,                                      :        CASE NO. CA2023-09-073

                                                         :        O P I N I O N
  - vs -                                                       4/1/2024

                                                         :

MELISSA JACKSON,                          :

    Appellant.                                    :


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 08DR032193


Melanie Walls Law, and Melanie B. Walls, for appellee.

Caparella-Kraemer & Associates, LLC, and Courtney N. Caparella-Kraemer, for appellant.


**S. POWELL, P.J.**

{¶ 1}   Appellant, Melissa Jackson ("Mother"), appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, granting the motion for contempt filed by her ex-husband, appellee, Christopher Dickenson ("Father").  Mother also appeals the domestic relations court's decision ordering her to pay attorney fees and

litigation expenses to Father. For the reasons outlined below, we affirm the domestic relations court's decision in both respects.

**Facts and Procedural History**

**{¶ 2}** Mother and Father were married in Litchfield, Illinois on June 9, 2001. There was one child born issue of the marriage, a girl, Anna, born on March 28, 2008.[1] Father filed a complaint for divorce from Mother on August 1, 2008. After entering a shared parenting plan, Mother and Father were subsequently divorced on April 10, 2009. The parties' shared parenting plan provided Father, as the resident parent, parenting time with Anna in accordance with the domestic relation court's "Basic I" parenting time schedule. That schedule provided Father parenting time with Anna while she was between the ages of two through 12 years old as follows:

> 1. **Weekends:** Alternate weekends beginning Friday at 6:00 p.m. and ending Sunday at 6:00 p.m.
>
> 2. **Weekdays:** Every Wednesday (or other day by agreement) from 5:30 p.m. to 8:30 p.m.

**{¶ 3}** Father was then to have the following parenting time with Anna when she was between the ages of 13 years old through 15 years old:

> **Weekends and Weekdays:** It is recommended that the above schedule for children age two through twelve be continued through age fifteen if possible. However, parents should respect a teenager's need to spend time with peers and in organized activities, and less time with each parent, especially during weekends and summer holidays. Quality of time is more important than a rigid schedule. Flexibility in scheduling is necessary. When possible, it is preferable to consider the teenager's wishes as long as the parents agree. At a minimum, the non-residential parent may spend time with children in this age bracket every Wednesday from 5:30 p.m. to 8:30 p.m. and at least one overnight and day on alternating weekends.

---

1. To protect the child's privacy, this court has changed the child's name to "Anna" for purposes of issuing this opinion. Anna was always either 13 or 14 years old relevant to this appeal.

**{¶ 4}** The shared parenting plan further provided Father with parenting time with Anna from 9:00 a.m. to 11:00 p.m. on the July 4th holiday during even years. This would include, for instance, the July 4, 2022 holiday. This was in addition to the shared parenting plan stating the following with respect to Anna's activities:

> Although it is in the best interests of the Child to take part in activities which provide enrichment for the Child, the parties acknowledge that they shall not, without the other's consent, schedule activities for the Child which interfere with the time that the other has possession of the Child. The parties will discuss the enrollment of the Child in extra-curricular activities prior to said enrollment and the other parent shall be provided with a schedule of these events.

**{¶ 5}** On April 12, 2022, Father filed a motion for contempt against Mother. Within that motion, Father alleged that Mother should be found in contempt for denying him his parenting time with Anna on Friday, January 21, 2022. Father also alleged that Mother should be found in contempt for having "clearly and unambiguously" notified him that she would be denying him extended parenting time with Anna during the upcoming summer of 2022. This included, but was not limited to, Father's parenting time with Anna on the upcoming July 4, 2022 holiday.

**{¶ 6}** The matter ultimately came on for a two-day hearing before a domestic relations court magistrate on January 19 and March 6, 2023.[2] During this hearing, the magistrate heard testimony from both Mother and Father. This included Father testifying that, in addition to Mother being in contempt for denying him his parenting time with Anna on Friday, January 21, 2022, Mother should also be found in contempt for denying him his parenting time with Anna on the July 4, 2022 holiday. Father further testified that, although it was not included within his contempt motion, Mother should be found in

---

2. Mother did not appear at the second hearing date, March 6, 2023, claiming she did not receive notice of the hearing. Mother's attorney, however, was present at the March 6, 2023 hearing date, during which she dismissed all of Mother's then pending motions that were to be addressed at that hearing.

- 3 -

contempt for scheduling activities for Anna during Father's parenting time without first discussing the matter with Father.

{¶ 7} On April 6, 2023, the magistrate issued a decision finding Mother in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022. In so holding, the magistrate stated:

> First, on Friday, January 21, 2022, Mother allowed [Anna] to choose which basketball game she wanted to attend [Milford or Lakota East/West]. This was during Father's parenting time. Mother admitted this. This caused Father to lose his Friday overnight parenting time. Mother's defense that her interpretation of the Warren County Basic Parenting Scheduled allowed Mother to do this is incorrect. Mother interpreted the rule for twelve (12) year olds as one weekend night and one weekend day, and that is what [Anna] chose. Mother failed to consider the fact that the Warren County Basic Parenting Schedule also states, in this same paragraph on page two (2), letter D., "When possible, it is preferable to consider the teenager's wishes as long as the parents agree." Father disagreed with the evening of January 21, 2022. There was testimony about whether this was the correct basketball game but that is irrelevant to the fact that Father was denied his overnight parenting time on January 21, 2022. Mother is in contempt of the [parties' shared parenting plan].

{¶ 8} The magistrate also found Mother in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday. This was in addition to the magistrate finding Mother in contempt for scheduling activities for Anna during Father's parenting time without first discussing the matter with Father. This included Mother signing Anna up for cross-country, track, and basketball.

{¶ 9} Upon finding Mother in contempt, the magistrate then ordered Mother to pay a total of $2,250 in attorney fees to Father; $750 in attorney fees "for being found in contempt," plus an additional $1,500 in attorney fees and litigation expenses for having filed "numerous motions" that "were voluntarily withdrawn on the second day of hearings,"

March 6, 2023, for which Father was billed a total of $3,374.10.[3] The magistrate determined that this additional award of attorney fees and litigation expenses was "equitable" given "Mother's conduct, and the withdrawal of all of her motions the second day of the hearings," when also taking into consideration Father had also "switched attorneys" while these proceedings were ongoing, thereby requiring Father's newly retained counsel "to do some repetitive work."

{¶ 10} On April 18, 2023, Mother filed an objection to the magistrate's decision. To support her objection, Mother provided a general, boilerplate objection to the magistrate's decision finding her in contempt. Specifically, Mother stated within her objection the following:

> Plaintiff (sic) objects to the Magistrate's finding of contempt. Defendant also reserves the right to object to other Orders contained within the Decision, after full review of the transcript.

> Defendant respectfully requests more time to allow for the preparation of the transcript. Once the transcript is complete, counsel for Defendant will review said transcript, which will allow counsel to lay a more solid foundation and appropriately supplement the objection.

{¶ 11} On July 24, 2023, Mother filed supplemental objections to the magistrate's decision finding her in contempt. This included Mother arguing against the magistrate's decision finding her in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022 and on the July 4, 2022 holiday. This also included Mother arguing against the magistrate's decision finding her in contempt for scheduling activities for Anna that occurred during Father's parenting time without first discussing the matter with Father. This was in addition to Mother arguing against the magistrate's decision

---

3. The "numerous motions" the magistrate was referring to included Mother filing her own motion for contempt against Father, as well as Mother filing a motion to modify Father's child support obligation, a motion requesting the domestic relations court conduct an interview with Anna, and a motion to modify her and Father's shared parenting plan.

ordering her to pay $2,250 in attorney fees and litigation expenses to Father.

{¶ 12} On August 10, 2023, the domestic relations court issued a decision on Mother's objections. Within that decision, the domestic relations court initially overruled Mother's objection to the magistrate's decision finding her in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022. In so doing, the domestic relations court determined that the parties' shared parenting plan, along with the domestic relations court's own applicable "Basic I" parenting time schedule, did not "give Mother the authority to override Father's decision on the events of a particular weekend." The domestic relations court instead found the language set forth within its "Basic I" parenting time schedule for children aged 13 years old to 15 years old was:

> a statement designed to encourage Father to recognize that, on his weekends, a child may have other plans or activities, and Father should try to accommodate those other events. Thus, it was possible for Father to exercise his weekend time that weekend, and therefore [it was] Father, not Mother, [who] should have been afforded the choice of whether to use all of it or not.

{¶ 13} The domestic relations court also overruled Mother's objection to the magistrate's decision finding her in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday. In so holding, the domestic relations court rejected Mother's argument that she could not be held in contempt for denying Father his parenting time on that date because "no specific motion was filed by Father that alleged contempt regarding that holiday." In reaching this decision, the domestic relations court determined that Father's motion for contempt:

> sufficiently put Mother on notice of what she needed to defend when the matter came before the Court. As a result, Mother's argument that an allegation of anticipatory contempt of court is not ripe for adjudication, the Court finds that it was when the hearing on the motion occurred after the violation.

{¶ 14} The domestic relations court further overruled Mother's objection to the

magistrate's decision finding her in contempt for scheduling activities for Anna that occurred during Father's parenting time without first discussing the matter with Father. The domestic relations court did this by finding "this was not specifically objected to" in Mother's initial objection to the magistrate's decision filed on April 18, 2023. This was in addition to the domestic relations court overruling Mother's objection to the magistrate's decision ordering her to pay $2,250 in attorney fees and litigation expenses to Father.

**Mother's Appeal and Four Assignments of Error**

{¶ 15} On September 12, 2023, Mother filed a timely notice of appeal from the domestic relations court's decision finding her in contempt and ordering her to pay attorney fees and litigation expenses to Father. Mother's appeal now properly before this court for decision, Mother has raised four assignments of error for review.

*Assignment of Error No. 1:*

{¶ 16} THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY FINDING MOTHER IN CONTEMPT FOR NOT PROVIDING FATHER PARENTING TIME THE WEEKEND OF JANUARY 21, 2022.

{¶ 17} In her first assignment of error, Mother argues the domestic relations court erred by finding her in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022. We disagree.

<u>Rule of Law: Contempt and R.C. 2705.02(A)</u>

{¶ 18} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. This rule is codified in R.C. 2705.02(A), which provides that, a person guilty of any of the following acts may be punished as for a contempt, "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]" "To support a contempt finding, the moving party must establish by clear and convincing evidence that

a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order." *Delgado v. Delgado*, 12th Dist. Clermont No. CA2018-03-007, 2018-Ohio-4938, ¶ 36. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Standard of Review: Abuse of Discretion

{¶ 19} "This court reviews a domestic relations court's determination of a contempt motion for an abuse of discretion." *Wiest v. Carmosino*, 12th Dist. Clermont No. CA2018-10-073, 2019-Ohio-3536, ¶ 17. "An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Maloney v. Maloney*, 12th Dist. Warren No. CA2015-10-098, 2016-Ohio-7837, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Most cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Schaible v. Schaible*, 12th Dist. Clermont No. CA2022-06-029, 2022-Ohio-4717, ¶ 24. "A decision is 'unreasonable' when there is no sound reasoning process to support it." *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 12, citing *AAA Enterprises, Inc. v. River Place Community Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Crawford v. Fisher*, 10th Dist. Franklin No. 14AP-366, 2015-Ohio-114, ¶ 5. "An unconscionable decision may be defined as one that affronts the sense of justice, decency, or

reasonableness." *Fernando v. Fernando*, 10th Dist. Franklin No. Franklin No. 16AP-788, 2017-Ohio-9323, ¶ 7.

<u>Mother's Argument and Analysis</u>

{¶ 20} Mother argues the domestic relations court erred by finding her in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022 because Father received parenting time with Anna beginning the next morning, Saturday, January 22, 2022 at 6:00 a.m. through Sunday, January 23, 2022 at 6:00 p.m. Therefore, according to Mother, the domestic relations court erred by finding her in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022 because "the minimum suggested weekend parenting time schedule of one overnight and day was adhered to." However, just as the domestic relations court found, Mother's understanding of what is required by the domestic relations court's "Basic I" parenting time schedule for a 13-through-15-year-old child like Anna is flawed.

{¶ 21} Contrary to Mother's claim, the domestic relation court's "Basic I" parenting time schedule for Anna recommended Father, as the nonresidential parent, to continue having parenting time with Anna in accordance with the same parenting time schedule that Father had with Anna when she was between the ages of two and 12 years, if possible. That being, every Wednesday from 5:30 p.m. to 8:30 p.m. and on alternate weekends beginning on Friday at 6:00 p.m. until Sunday at 6:00 p.m. The only difference between the two schedules—the two-to-12-year-old schedule and the 13-through-15-year-old schedule—was the domestic relations court's notice to both Mother and Father that they "should respect [Anna's] need to spend time with peers and in organized activities, and less time with each [of them], especially during weekends and summer holidays," thereby making "[f]lexibility in scheduling * * * necessary." But, even then, neither the parties' shared parenting plan nor the domestic relations court's "Basic I"

parenting time schedule, provided Anna with the ultimate authority over her schedule, irrespective of what Father may (or may not) have planned during his weekend parenting time with her. This includes Father's parenting time with Anna on Friday, January 21, 2022.

{¶ 22} Rather, the domestic relations court's "Basic I" parenting time schedule for the then 13-through-15-year-old Anna simply noted that it would be "preferable" for both Mother and Father to consider Anna's wishes "[w]hen possible" and "as long as the parents agree." Father clearly did not agree with Mother as it relates to Anna's wishes for Friday, January 21, 2022. The fact that Father received parenting time with Anna beginning on Saturday, January 22, 2022 at 6:00 a.m. through Sunday, January 23, 2022 at 6:00 p.m. does not change this fact. Again, the domestic relation court's "Basic I" parenting time schedule for Anna recommended Father, as the nonresidential parent, to continue having parenting time with Anna in accordance with the same parenting time schedule that Father had with Anna when she was between the ages of two and 12, if possible. That being, every Wednesday from 5:30 p.m. to 8:30 p.m. and on alternate weekends beginning on Friday at 6:00 p.m. until Sunday at 6:00 p.m. It is only "when possible" and "as long as the parents agree" that Father should receive anything less. This holds true even if Anna's wishes diverge from that of Father's. It was not error, therefore, for the domestic relations to find Mother lacked "the authority to override Father's decision on the events of a particular weekend," including that of Friday, January 21, 2022.

{¶ 23} In so holding, we note that at the first day of the two-day hearing on Father's motion for contempt, Father testified that he did not "think it's too much to ask for a parent to tell a thirteen year old girl what they can or can't do." Father also testified that:

> In this case, I have shown time and time, again, where I do

respect [Anna's wishes for what she does during his weekend parenting time]. But in the case in question, I did not. It doesn't say that every time your teenage daughter asks can I go out Friday night, you have to say yes.

{¶ 24} This is in addition to Father testifying that nowhere within the domestic relations court's "Basic I" parenting time schedule for 13-through-15-year-old children "does it say the nonresidential parent will do anything the teenage daughter asks. And I'm following my Basic I weekends. So…" We agree with Father. This is because, as stated above, neither the parties' shared parenting plan, nor the domestic relations court's "Basic I" parenting time schedule, provided either Anna or Mother with the ultimate authority over her schedule, irrespective of what Father may (or may not) have planned during his weekend parenting time with her. Accordingly, finding no error in the domestic relations court's decision finding Mother in contempt for denying Father his parenting time with Anna on Friday, January 21, 2022, Mother's first assignment of error lacks merit and is overruled.

*Assignment of Error No. 2:*

{¶ 25} THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY FINDING MOTHER IN CONTEMPT WHERE NO MOTION RELATING TO THE CONTEMPT WAS EVER FILED OR SPECIFICALLY PLED.

{¶ 26} In her second assignment of error, Mother argues the domestic relations court erred by finding her in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday. To support this claim, Mother initially argues that it was error for the domestic relations court to find her in contempt for denying Father his parenting time with Anna on this holiday because the "first reference to the Fourth of July at all was during the trial in the within proceedings." We disagree. This is because, while not explicit, Father's motion for contempt specifically stated that Mother should be found in

- 11 -

contempt for "clearly and unambiguously" notifying him that she would be denying him extended parenting time with Anna during the then upcoming summer of 2022. Given the notice that Father provided to Mother, this included, but was not limited to, Mother denying Father his parenting time with Anna on the impending July 4, 2022 holiday. Therefore, just as the domestic relations court found, and with which we agree, Father's motion for contempt "sufficiently put Mother on notice of what she needed to defend when the matter came before the Court." Mother's claim otherwise lacks merit.

{¶ 27} Also lacking merit is Mother's claim that the domestic relations court erred by finding her in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday because Father's motion for contempt was filed approximately three months prior to that date, on April 12, 2022, thereby rendering Father's contempt motion a request for "anticipatory contempt" based upon her "prospective conduct" rather than on any past conduct on her part. It is well established that "'[t]here is no doctrine of anticipatory contempt in our legal system. An adjudication of contempt relates to past conduct, not prospective conduct.'" *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 42, quoting *Kirk v. Kirk*, 172 Ohio App. 3d 404, 2007-Ohio-3140 ¶ 5 (3rd Dist.).

{¶ 28} However, just as the domestic relations court found, "Mother's argument that an allegation of anticipatory contempt of court is not ripe for adjudication, the Court finds that it was when the hearing on the motion occurred after the violation." We agree. This makes sense when considering the domestic relations court issued its decision finding Mother in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday over a year later, on August 23, 2023, well after Mother had, in fact, denied Father his parenting time with Anna on that date. Therefore, contrary to Mother's claim, the domestic relations court did not err by finding Mother in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday where Father's motion for

contempt was filed prior to that date. Mother's claim otherwise again lacks merit.

{¶ 29} In so holding, we note that this decision shall be limited to the specific facts and circumstances of this case and should not in any way be considered as this court approving contempt motions being filed based solely upon one party's belief that the other party is going to violate the court's order at some point in the future. "To hold otherwise would result in the dockets of the courts being filled with antagonistic parties filing motions to show cause merely because they believe the other party is going to violate the court's orders." *Kirk*, 2007-Ohio-3140 at ¶ 5. In this case, however, the record indicates that Mother "clearly and unambiguously" notified Father that she would be denying him extended parenting time with Anna during the then upcoming summer of 2022. This included, but was not limited to, Father's parenting time with Anna on the impending July 4, 2022 holiday. Therefore, the domestic relations court's contempt finding, which occurred long after the contempt actually occurred in this case, is neither anticipatory nor error that necessitates reversal.

{¶ 30} Mother's express notice to Father that she would be denying Father his parenting time with Anna on the July 4, 2022 holiday prompted Father to file his motion for contempt in hopes that the domestic relations court could resolve the issue prior to that date. We cannot fault Father for filing his motion for contempt prematurely given Mother's prior history of denying Father his parenting time with Anna. This is particularly true here when considering the July 4, 2022 holiday was the lone prospective date in which Father's motion for contempt was based, whereas others were past dates in which there was no dispute that Mother had already denied Father his parenting time with

Anna.[4] Accordingly, finding no error in the domestic relations court's decision finding Mother in contempt for denying Father his parenting time with Anna on the July 4, 2022 holiday, Mother's second assignment of error also lacks merit and is overruled.

*Assignment of Error No. 3:*

{¶ 31} THE TRIAL COURT ERRED IN FINDING THAT MOTHER DID NOT SPECIFICALLY OBJECT TO THE FINDING OF CONTEMPT RELATING TO ENROLLMENT OF THE MINOR CHILD IN ACTIVITIES.

{¶ 32} In her third assignment of error, Mother argues the domestic relations court erred by finding she had not specifically objected, as part of her original and supplemental objections to the magistrate's decision filed on April 18 and July 24, 2023, respectively, to the magistrate's decision finding her in contempt for scheduling activities for Anna that occurred during Father's parenting time without first discussing the matter with Father. We agree with Mother. That is to say, we agree that Mother specifically raised this issue as part of her supplemental objections to the magistrate's decision filed with the domestic relations court on July 24, 2023.

{¶ 33} However, contrary to Mother's claim, the fact that Mother raised this issue as part of her supplemental objections to the magistrate's decision does not necessarily mean this matter must be reversed and remanded to the domestic relations court for consideration of the issue. This is because, although raised as part of her supplemental objections, Mother never raised any challenge, at either the first or second day of the two-day hearing on Father's motion for contempt, to the question of whether Mother could be found in contempt for scheduling activities for Anna that occurred during Father's

---

4. The past dates included Friday, January 21, 2022 as discussed under Mother's first assignment of error, as well as October 29 through October 31, 2022, days in which Father later received make-up parenting time with Anna from Mother.

- 14 -

parenting time without first discussing the matter with Father. By failing to object in the first instance, Mother implicitly acquiesced to that issue being litigated and made a part of what the magistrate was to decide when ruling on Father's motion for contempt.

**{¶ 34}** In the absence of a timely objection at the two-day hearing held on Father's contempt motion, and when considering there is a complete lack of any reluctance on Mother's part to allow Father to testify on the issue of whether Mother could be found in contempt for scheduling activities for Anna during Father's parenting time without first discussing the matter with Father, we find Mother has waived the right to contest this issue on appeal. This holds true even though Mother raised that issue as part of her supplemental objections to the magistrate's decision filed with the domestic relations court on July 24, 2023. *See generally Courtney v. Courtney*, 11th Dist. Trumbull No. 94-T-5049, 1994 Ohio App. LEXIS 5423, *10 (Dec. 2, 1994) ("In the absence of a timely objection, appellant has waived the right to contest this issue on appeal. Certainly, this should still be the case when there is a complete absence of even a hint of any reluctance to the taking of testimony").

**{¶ 35}** In so holding, we note the well-established principle that, "[u]nder the invited error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Klein v. Dietz*, 7th Dist. Mahoning No. 95 CA 47, 1998 Ohio App. LEXIS 6196, *22 (Dec. 16, 1998). Such is the case here. It was Mother's failure to object, at either the first or second day of the two-day hearing on Father's motion for contempt, that ultimately resulted in the question of whether Mother should be found in contempt for scheduling activities for Anna during Father's parenting time without first discussing the matter with Father being litigated and presented to the magistrate for decision. Therefore, finding no error that warrants reversal of the domestic relations court's decision, Mother's third assignment of error likewise lacks merit and is

overruled.

*Assignment of Error No. 4:*

**{¶ 36}** THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER IN AWARDING ATTORNEY FEES AND COSTS TO FATHER BASED UPON IMPROPER FINDINGS OF CONTEMPT.

**{¶ 37}** In her fourth assignment of error, Mother argues the domestic relations court erred by ordering her to pay attorney fees and litigation expenses to Father. We disagree.

Rule of Law: Attorney Fees, Litigation Expenses, and R.C. 3105.73(B)

**{¶ 38}** Pursuant to R.C. 3105.73(B), in any postdecree motion or proceeding that arises out of an action for divorce, a domestic relations court is authorized to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether such an award is equitable, the domestic relations court "may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." *Id.* However, although statutorily authorized to do so, the domestic relations court is not obligated to make such an award in every case. *Davis v. Davis*, 6th Dist. Wood No. WD-15-028, 2016-Ohio-1388, ¶ 31. The decision instead rests within the domestic relations court's sound discretion. *Theurer v. Foster-Theurer*, 12th Dist. Warren Nos. CA2008-06-074 and CA2008-06-083, 2009-Ohio-1457, ¶ 57.

**{¶ 39}** Given these principles, it is now well established that the domestic relations court's "decision to award attorney fees will be reversed only if it amounts to an abuse of discretion." *Coomes v. Coomes*, 12th Dist. Clermont No. CA2019-10-076, 2020-Ohio-3839, ¶ 12. "An abuse of discretion is more than an error of law; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Combs v. Ellington*, 12th Dist.

- 16 -

Butler CA2022-01-001, 2022-Ohio-3514, ¶ 18, citing *Blakemore*, 5 Ohio St.3d at 219. "The vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Bonifield v. Bonifield*, 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 11. "A decision is 'unreasonable' when there is no sound reasoning process to support it." *Vaughn*, 2007-Ohio-6569 at ¶ 12.

<u>Mother's Argument and Analysis</u>

**{¶ 40}** Mother argues that, since the domestic relations court's decision finding her in contempt was "not proper," the domestic relations court's order requiring her to pay attorney fees and litigation expenses to Father was also not proper. We agree that, had the domestic relations court erred by finding Mother in contempt, upholding the domestic relations court's order requiring Mother to pay attorney fees and litigation expenses to Father would be inequitable. *See Manker v. Manker*, 12th Dist. Clermont No. CA2005-12-106, 2006-Ohio-6545, ¶ 25 (finding a domestic relations court's decision ordering appellant to pay attorney fees to appellee was "inequitable" where the award of attorney fees "was based on the contempt finding which we found was error in the first assignment of error"). However, as noted above when overruling Mother's first, second, and third assignments of error, the domestic relations court's decision finding Mother in contempt was proper, thereby rendering Mother's argument without merit.

**{¶ 41}** Moreover, to the extent that Mother is arguing the domestic relations court's decision is impossible to decipher, thus making it "impossible to know whether there was a multiplication of the fee awarded based upon the number of original contempt findings," we agree with the domestic relations court when it stated, "[r]egarding that argument, the Court finds the attorney fee was not multiplied because of multiple violations. The amount awarded was the same as it would have been for just one violation." Mother's argument otherwise lacks merit. Accordingly, finding no merit to any of the arguments raised by

Mother in support of her fourth assignment of error, including those arguments raised by Mother not directly addressed herein, Mother's fourth assignment of error similarly lacks merit and is overruled.

## Conclusion

{¶ 42} For the reasons outlined above, and finding no merit to any of Mother's four assignments of error presented to this court for review, Mother's appeal from the domestic relations court's decision granting Father's motion for contempt and ordering Mother to pay attorney fees and litigation expenses to Father is denied.

{¶ 43} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.